# SAMUEL J. SHERMAN *v.* D. S. K. BUICK AND JOHN CARRICK.

| 32 | 241 |
| 82 | 156 |
| 32 | 241 |
| 83 | 511 |
| 32 | 241 |
| 93 | 214 |
| 32 | 241 |
| e139 | 134 |
| f139 | 135 |
| 32 | 241 |
| e141 | 347 |

CONSTITUTIONALITY OF LAW FOR OPENING ROADS.—The Legislature has the constitutional power, under the right of eminent domain, to pass laws for opening roads, called in the statute "private roads," from the main roads leading through the country to the residences or farms of individuals, and over lands not belonging to the persons to whose residences or farms the roads thus opened lead.

ROADS CALLED "PRIVATE ROADS" ARE FOR PUBLIC USE.—Roads leading from the residences or farms of individuals to the main road which runs through the country, called in the statute "private roads," are of public concern, and under the control of the Government, and are open to every one who may have occasion to use them, and are therefore public roads.

LAND TAKEN FOR ROADS IS NOT APPLIED TO PRIVATE USE.—A law providing for opening a road from the farm or residence of A, across the land of B, to a main road leading through the country, upon just compensation being made, does not have the effect of taking the private property of B and applying it to the private use of A.

CONSTITUTIONALITY OF LAWS.—In passing on the constitutionality of a law, it is the duty of Courts to look to the true object of the law, and to trace out its true result, and not to be guided by those objects or results which the Legislature may have mistakenly declared; and if the law be found to be consistent with the Constitution, or within the acknowledged power of the Legislature, to uphold it.

ALL ROADS ARE PUBLIC.—The phrase "private road" is unknown to the common law.   All "roads" are public.

ROADS IN SANTA CLARA COUNTY.—The Act for opening roads in Santa Clara County provides for compensation to be made for the land taken for the road.

ANSWER IN ACTION FOR TRESPASS IN OPENING ROAD.—In an action for damages for an alleged trespass upon the plaintiff's land, if the defendant justifies the alleged trespass under the Act in relation to laying out and establishing roads, he must in his answer show a strict compliance with all the provisions of the statute.

LAYING OUT ROADS.—Whether a given road will subserve the public need or convenience, is a question for the Government alone to determine.   The Courts have nothing to do with it.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The trespass was alleged in the complaint to have been committed on the 1st day of March, 1866. The action was commenced April 28th, 1866.

The other facts are stated in the opinion of the Court.

*Peckham & Payne*, for Appellants.

It will not be presumed that the Legislature intended to violate the Constitution, and if the law is susceptible of two constructions, one of which will place it in antagonism with the Constitution, and the other will not, that which will not thus place it must be adopted. (*People* v. *Reed*, 6 Cal. 228; *People* v. *Langdon*, 8 Cal. 11; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 446.) We concede the rule to be that private property cannot be taken for private use under the Constitution. Private property, however, may be taken for public use, upon making a just compensation. Two questions are here presented:

First, What is a public use, within the meaning of the Constitution?

Second, Which is the ultimate judge of the question; the judicial or the legislative department of the Government?

In answer, we lay down the following rules as being consistent with all, and sustained by most of the authorities:

First—Taking the property of one man and transferring it to another to be done with as he, the other, sees fit, is taking private property for private use, and is not within the province of legislative authority.

Second—Taking the property of one man and transferring it to another for a particular use, where that use by him will in no manner result to the safety, interest, convenience, or expediency of the State, or to the wants, benefits, or convenience of the people generally, or of any considerable portion of the people, either directly or indirectly, is a taking not within the province of legislative authority.

Third—But the taking of one man's property and transferring it to another for a particular use, where that use will either directly or indirectly inure to the safety, interest, con-

venience, or even expediency of the State, or to the wants, benefits, or convenience of the people generally, or of any considerable portion of them, whether it be for building forts, arsenals, docks, wharves, roads, highways, mills, manufactories—opening the avenues of trade, commerce, and communications; supplying the people with the wants of life, as water or any other necessaries, or in improving the country, opening up the avenues of labor, or ameliorating the condition of the people, is a legitimate exercise of the power of eminent domain, and the only restriction upon it is that just compensation shall be made.

*Fourth*—Where the use will not benefit any but the person to whom the property is transferred, it is a clear case of an unconstitutional taking, and a judicial question. Where it will benefit others, the question as to how many others it should benefit to warrant the exercise of the power, cannot in the nature of things be tested by any fixed standard; and cannot for this reason be a judicial question, but one resting exclusively in the discretion and wisdom of the Legislature.

Acts for the condemnation of lands and water privileges for mill sites were held to be constitutional in *Harding* v. *Goodlett*, 3 Yerger, 41; *Boston and Rocksbury Mill Corporation* v. *Newman*, 12 Pick. 467; *Newcomb* v. *Smith*, 1 Chandler, 71; and *Gotthelf* v. *Voegtlander*, 3 Wis. 46. Where the Court can see that the building of a basin in the State for the terminus of a canal made in another State will be of any benefit to the neighborhood, such benefit will feed the power of eminent domain; and whether the case is one for the proper exercise of that power is for the Legislature to judge, and the judicial department has no power of review. (*Morris Canal Co.* v. *Townsend*, 24 Barb. 658.) It belongs to the Legislature to determine whether the benefits to be derived to the public by such improvements are sufficient to justify the exercise of the power of eminent domain. (*Bloodgood* v. *The M. and H. R. R. Co.*, 18 Wend. 9.)

The Legislature is the sole judge as to the necessity of taking private property for public use. (*Vanhorne* v. *Dor-*

*rance,* 2 Dall. 304.) The power of eminent domain resides in the Legislature. They are the exclusive judges as to the proper cases for its exercise, and the judiciary cannot review their action. (*Dunn* v. *The City Council,* Harp. Rep. 189.) So in the exercise of the power of eminent domain, the Legislature is the exclusive judge of the necessity, and of the degree and quality of interest in the land which it is proper to take for the public. (*De Varaigne* v. *Fox,* 2 Blatchford, 95.) And as to the right of private individuals to condemn property under the Acts of the Legislature for their purposes, it was held that such Acts are constitutional when the use will be convenient to a large portion of the public, though *private profit* may be the *leading motive,* and that as to what is public convenience the Legislature may determine; and when determined, the Courts will presume it correctly done. The question does not, in judicial consideration, depend on the proportion which the public interest bears to that of the private individual. (*Commonwealth* v. *Breed,* 4 Pick. 460; *Spring* v. *Russel,* 7 Green, Iowa, 273.) The question as to whether the public necessity and convenience demand the taking of private property, is one over which the legislative power is the exclusive judge. (*Charles River Bridge* v. *Warren River Bridge,* 7 Pick. 453–466.)

Is the laying out and establishment of private roads such a use as will justify the exercise of such a power? Plaintiff answers in the negative, and cites the only case bearing upon the subject on his side of the question—the opinion of a majority of the Court in *Taylor* v. *Porter,* 4 Hill, 140. In solving the question, the first thing to be ascertained is as to what constitutes a private road within the meaning of the Act of the Legislature, and who has a right to use it. Is the right of user limited to the person at whose instance it is created, or has every citizen of the State a right to use it at his pleasure? If every citizen of the State has a right to use it then no question can exist as to the constitutionality of the law, any more than of that for the laying out and establishment of

public roads. The public right and the public use exist, and the benefits exist, only in a less degree.

Private roads, unless synonymous with private ways, are an institution unknown to the common law. Private ways are co-existent with its earliest history. They are created by grant, prescription, or arise from necessity. But a private way, created by act of the sovereign power, is something of which we have never read in any treaties upon the common law. Private ways are for the use of private individuals. The rules and relations of parties to them are well settled both in England and in the United States. Private roads are of American origin, and we must look to the American statutes and American decisions to ascertain what they are, how they are created, and what the respective rights of parties are in reference to them. The term "private road," when used in American statutes without qualification, has been construed, not only by use among the people, but judicially by the Courts, by the people by common consent. They have existed from the earliest period of our colonial history; and so far as we have been able to discover, the right of each and every citizen to use them for the purpose of passing and repassing over them has never been challenged in the Courts. We can safely say that no reported case can be found in the United States where any man has been successfully prosecuted for passing over any private road laid out and established on the application of another, in pursuance of an Act of the Legislature. (*Allen* v. *Stevens*, 5 Dutcher, 507 ; *Metcalf* v. *Bingham*, 3 N. H. 459.)

*Thomas Bodley*, for Respondent.

The road law of 1861, under which defendants justify, has been declared unconstitutional. (*Curran* v. *Shattuck*, 24 Cal. 432.) Admitting, however, that the Act as taken in connection with the Act of 1864, is constitutional, then we insist that the proceedings taken in this case as set up in the answer do not comply with its terms. He who relies for a title or right upon an extraordinary mode of acquisition given him by

law, against the will of the owner, must show a strict compli-
ance with the statutory rules from which his title accrues.
(*Bensley* v. *Mountain Lake Water Co.* 13 Cal. 315; Sedg-
wick's Stat. and Const. Law, 319; 24 Cal. 432.) The pro-
ceedings in this case were fatally irregular in several partic-
ulars. We contend that as to whether propertý, in any given
case, has been condemned for a public or private use is and
can be nothing but a purely judicial question. Otherwise the
solicitude of the framers of our Constitution for protecting
rights would be of no avail. The Legislature would only
have to pass a law and say that the powers conferred are for
the public use, and the mouths of Courts would be closed.
In cases of the contemplated taking of private property for a
public use, we concede it to be a matter of legislative discre-
tion as to whether the public use is so important as to justify
the exercise of the right of *eminent domain;* but as to *what
constitutes that use* is nothing more nor less than a naked judi-
cial question. The only question which we care to discuss is
as to whether the *taking* in this case was for a *public use.* If
it is, then there is an end of the constitutional question, so far
as this branch of the case is concerned. The Constitution
fails to define the meaning of the term " public use."· Com-
mon sense, then, must be the expounder. It seems that there
ought to be but little difficulty in the task, so far as the case
at bar is concerned. The question as to whether the contem-
plated road is a public improvement for the use of the public,
ought to be determined by the fact who is to use it? The
public at large or the petitioners? The case of *Taylor* v.
*Porter,* 4 Hill, 140, is directly in point. If that decision is
good law, then this judgment must be sustained. In New York
a private road is private property. The same is true of our
private roads. A private road in California may be located
and established upon the petition of one citizen. He alone
must pay the expenses of the condemnation, the damages and
cost of the land, etc., the expenses of erecting gates and other
protections, and must keep the road and these protections in
repair. We confess that we are at a loss to see how counsel

can conclude that a private road laid out under our statute becomes *public property*. We think that the petitioner alone is entitled to the use. Others can use it to the same extent and no further than they could his private inclosure. In a word, the owner of a private road, established by condemnation of land under our law, can maintain an action of trespass against any person, and for any cause that he could for trespass upon any other part of his private inclosure. The very name " private road " indicates its true character. If it had the properties of a public road it would also have been made and kept in repair by the public. But it is private property, and is a subject of alienation just as much as the petitioner's own land. This will not be denied where the right is secured by agreement between the parties in interest. We can see no difference in the right acquired, whether by contract between the parties or by statutory process of condemnation. The Legislature in the latter case (provided the owner of the land over which the road is to run refuses to sell the right of way,) proceeds to appropriate by process of law that right which might have been settled between the parties by agreement. It is simply a forced sale by the owner of the land to the petitioners. When the right is perfected by either process—by private contract or by condemnation—the characteristics of the road, and the rights settled, are the same in every particular. View this case in any light we may and it can only be considered an attempt on the part of the Legislature to condemn lands to the private use of another. There is no possible use to which such a road can be appropriated by the public any more than a private passway inside of the inclosure of any farmer in the State. A "public use" means "a use which concerns the whole community." Again : " It must be of such a character as that the general public may, if they choose, avail themselves of it." (*Gilmer* v. *Lime Point*, 18 Cal. 229 ; 16 Curtis' U. S. 809 ; *Dickey* v. *Tennison*, 27 Miss. 373.)

By the Court, SANDERSON, J. :

The plaintiff sues to recover damages for an alleged trespass upon his land. The defendants justify the supposed trespass by virtue of certain proceedings had by the Board of Supervisors of Santa Clara County, in which the land is situated, under the provisions of certain Acts of the Legislature in relation to public and private roads. (Stats. 1861, p. 389; 1863–64, p. 248.) The proceedings in question were had under the provisions of the statute which relate to the laying out and establishing of what are there called private roads. (Stats. 1861, p. 392, Sec. 7.) The plaintiff demurs to the answer of the defendants, so far as it relates to the action of the Supervisors, and makes the points : First—That the statute in question, so far as it relates to what are there called "private roads," is unconstitutional and void; and Second— That the answer fails to show a compliance with the provisions of the statute in laying out and establishing the road in question. These points were held to be good in the Court below and the defendants have brought them here.

Section seven of the Act of 1861, which is made applicable to Santa Clara County by the Act of 1863–64, above cited, (Sec. 2,) provides that "any person or persons desiring to establish a road for private convenience, and which is not intended for the travelling public generally, may do so by consent of the parties owning the land affected thereby, but such consent, together with a specific description of the proposed private road, and the conditions in reference to gates, inclosures or other matters agreed upon, shall be filed with the Board of Supervisors or their Clerk; and upon the filing of such consent and specific description, such road shall be recorded in the road record of the county, and shall become to all intents and purposes a private road, for the use of the parties interested; provided, that the parties for whose benefit such roads are established shall keep them in repair at their own expense, except that they may, by special consent of the Roadmaster of the district, spend the amount of their poll tax

upon such private roads, and for such services they shall receive a certificate from the Roadmaster, on the same conditions and for the same purposes as provided for labor on public roads."/ Thereafter the statute proceeds to provide how such roads may be established when the owner or owners of the land will not consent. The proceedings are the same as in the case of public roads, except that only one petitioner is required. With the mode and manner, however, we are not called upon to deal, at this stage of the discussion, and sufficient has been already stated to show the character and intent of the statute—the first ground upon which it is claimed to be unconstitutional being not that it does not provide compensation for the land taken for the purposes of the road, but that it proposes to take private property for private use, which cannot be done, as claimed by counsel for respondent, even though compensation be made.

If, as claimed by counsel for the respondent, this statute was designed, or has the effect when enforced, to take the private property of A., without his consent, and apply it to the private use of B., though upon just compensation being made, we should not hesitate to declare it unconstitutional, as being an attempted exercise of power which the Legislature does not possess. In that view it would amount to a legislative sale and conveyance of A.'s property to B., or an easement in it, which amounts to the same thing, without the consent of the former. If such power is not denied to the Legislature in express terms, in the Constitution, it is by implication as satisfactory and direct as any express prohibition could have been. The acquisition, possession and protection of property are classed among the inalienable rights of all men. (Art. 1, Sec. 1.) To acquire and hold property is a natural right, with which the Legislature cannot interfere, except by virtue of some express provision of the Constitution, which is framed for the protection and not the destruction of the natural right of every one to life, liberty, property and the pursuit of safety and happiness. (Art. 1, Sec. 21.) No man can be deprived

32

of life, liberty or property without due process of law (Art. 1, Sec. 8) ; and due process of law means something more than mere legislation.   In this respect property is put upon the same level with life and liberty, and the Legislature has no more power over the former than either of the latter, except as expressly provided in the Constitution, when it is taken for public use or in the exercise of the power of eminent domain. Hence, if the legislation of this State in reference to private roads is constitutional, it is because it is an exercise of the power of eminent domain or the right which the Government has to take private property for public use upon making just compensation therefor.

Legislatures sometimes seem to mistake the powers with which they are vested, especially their nature and method of working, and hence not unfrequently, in the exercise of them they depart so widely from apt and proper modes as to cast a doubt upon their existence.   Sometimes they seem to assume or declare results which do not necessarily follow.   Sometimes they assume erroneous conditions as the foundation of a power which they are about to exercise.   Sometimes they mistake, or, at least, give a wrong or inapt designation to the objects which they seek to attain.   Hence they sometimes appear, upon first impression, to be dealing with an unknown, when, in fact, they are dealing with a familiar and universally acknowledged power.   They handle it, however, with so much awkwardness, or with such apparently imperfect knowledge of the true ends and purposes which it was designed to accomplish, and its modes of working, as to create in the mind of the casual looker-on the idea that they are working a power which is denied to them by the Constitution instead of the reverse.

With no power, of which they are possessed, do they seem to be less familiar, or to handle less awkwardly, than that of eminent domain.   At times they wield it in such a manner as to seem to apply it to objects not within its reach.   At times they fail, or seem to fail, to distinguish accurately between public and private ends, and if their terms and language be

alone consulted, to pervert the power to uses to which it cannot lawfully be applied. Thus, by distinguishing or classifying roads or highways by the words "public" and "private," and providing different modes for their establishment and support, and declaring that the latter class "shall be, to all intents and purposes, private roads for the use of parties interested," they give color to the idea, that in their judgment, they have the power to create and are creating a road for private use, and to make and are making it the private property of certain persons to the exclusion of all others. If we look solely at their language without regard to the true nature of the only power which they possessed in the premises, an impression that the property of the owner of the land is taken for private use is created, for there is an apparent if not an express appropriation of it to the use of certain parties to the exclusion of all others. But it is well understood that the language of the Legislature is to be read in all cases by the light of the Constitution, with the spirit of which it is always presumed to be consistent. In construing it, it is the duty of the Courts to look to the true object and to trace out the true result, and not to be guided by those which the Legislature has mistakenly assumed or declared; and if they be found to be consistent with the Constitution, or within the acknowledged power of the Legislature, to uphold the Act as to its legitimate results and to discard all else. Thus: If the Legislature provides for the laying out and establishing of a certain class of roads or highways which from any cause, whether for the purposes of classification or otherwise, is denominated "private," or as being for the especial benefit of certain individuals upon whom the burden of cost and repair is cast, instead of the public at large, it by no means follows that such roads become the private property or estate of the individuals designated, even if the Legislature has so provided in express terms; for where roads are laid out, whether mainly for the accommodation of particular neighborhoods or individuals or not, it must be understood as having been provided for the use of every one who may have occasion to travel it, and hence

as being public. In other words, the Legislature has no power to lay out and establish "private roads," in the sense that they are to be the private property of particular individuals or that they are what are denominated "private ways" at common law; and hence, so far as they undertake to do so their action is simply null and void; but the road so laid out and established becomes a way over which all may lawfully pass who have occasion, and therefore public; and the language employed by the Legislature, so far as it relates to the legal character of the road—as public or private—must be understood as being used for the purpose of distinguishing it from all other roads, or in general terms, for the purposes of classification.

In accurate legal contemplation the term "private road" involves a contradiction. The term is unknown to the common law. It has its origin in American legislation. It cannot be regarded as having been employed as a substitute for the word "way," as used at common law. There was no reason or excuse for such a change in legal terminology. It must be taken, therefore, as an invention, and as having been put to use originally merely for the purposes of demonstration—as giving a name to a certain class of roads differing from another and larger class in respect to the steps to be taken in establishing them in the first instance and of keeping them in repair afterward—differences founded upon the just idea that roads, though public, which mainly subserve the convenience of particular individuals should be made a charge upon them instead of the public at large. For the purpose of distinguishing between such roads and those which subserve equally the interests of all, a name for the former was needed, for the legal term "highway" was alike applicable to both; hence the terms "public" and "private" roads. The latter is not to be understood as being synonymous with "ways" at common law, but as indicating a particular class of highways or public ways over which any one may pass without committing trespass.

To lay out and establish roads or highways is exclusively

within the power and control of the Government. To do so is one of its most important and onerous duties. Roads or highways, over which the Government has supervision and which it is bound to provide, include not only the chief and principal thoroughfares which traverse the country, but also those of less general use which are lateral and serve to connect neighborhoods and individuals with the main arteries of trade and travel. Whenever the necessities or the convenience of the public, which includes everybody, requires a road, for the purposes of trade or travel, it is the duty of the Government to provide one, and, if necessary, to take private property for that purpose, upon making just compensation. Whether a given road will subserve the public need or convenience is a question for the Government alone to determine. The Courts have nothing to do with it. Should the Legislature be of the opinion that the general welfare and prosperity of the people would be promoted by the construction of a system of roads which would open a pathway from every man's house or farm to the main arteries of travel and the marts of trade and commerce, there is nothing to prevent them from providing that such roads may be opened. The ultimate decision of the question, whether a given road will subserve the public need or convenience, must rest somewhere, and it is wisely left for the Legislature to determine in such manner as they may provide. That the Legislature of this State is of that opinion, and have so provided, is apparent from the legislation under review. In the plan devised by them they have for the purposes of classification divided roads into "public and private," and provided how they may be laid out and established and how maintained. The former are to be laid out and maintained at the expense of the county or road district at large, and are therefore called "public." The latter at the expense of such persons as are more especially and directly interested in them, and therefore called "private." But the latter are as much public as the former, for any one can travel them who has occasion—and no more can be said of the former. Whether a way be public or private does not

depend upon the number of people who use it, but upon the fact that every one may lawfully use it who has occasion.

Had the word "private" and other words of like import been omitted from the statute, and instead thereof it had been provided "that any person or persons who desire a road to be laid out and established leading from their residences or farms to the main roads leading through their section of the country, and it shall appear that such road will be more to his or their benefit and convenience than the public at large, the Board of Supervisors shall have power to lay out and establish the same, provided," etc., there could be no doubt as to the validity of the Act. In legal effect there is no difference between such language and that which has been in fact employed.

The case of *Taylor* v. *Porter*, 4 Hill, 140, which declares a contrary doctrine, stands comparatively alone, so far as we have been able to discover, and does not command our assent. Mr. Justice Bronson, by whom the majority opinion was delivered, construed the New York statute as creating "a right of way," in the common law sense of that term, in favor of one man over another man's land, and not as authorizing the laying out and establishing a species of highway, and as a matter of course, in view of that reading, held the Act to be unconstitutional. The language of the New York statute on the question of "private or public" was much stronger in favor of the former than ours. It provided that the road, when laid out, should be for the use of the applicant, his heirs and assigns, and that the owner of the land through which it passed should not be allowed to use it unless he had signified his intention to do so before the damages were assessed. The Court was certainly correct in holding in effect that the Legislature did not possess the power to impress those conditions upon the road. To do so was to convert, or to attempt to convert the road into a mere common law right of way. But, in our judgment, the Court ought not to have held the entire Act void on account of those conditions, but void as to the conditions only. As to the question which was in fact discussed in that case and decided, there cannot be two

opinions. If we assume that the New York statute, or our own, has the effect to create a common law right of way merely in favor of A. over B.'s land without B.'s consent, the argument ends where it commenced, for it is too plain for argument that the power does not exist. But if we read the statute in the mode already suggested, it is equally plain that the Legislature has not usurped a power which it does not possess, but has merely departed from what is the more general and usual mode of laying out and establishing roads, and, in language which may be calculated to mislead, has adopted another which finds its warrant in the peculiar circumstances of a particular class, and for the purpose of distinguishing between the two classes has called one public and the other private.

Our conclusion is that the Act in question is not unconstitutional. (*Metcalf* v. *Bingham*, 3 N. H. 459; *Allen* v. *Stevens*, 29 New Jersey L. R. 509; *Brewer* v. *Bowman*, 9 Geo. 37; *Harvey* v. *Thomas*, 10 Watts, 63; *Pocopson Road*, 16 Penn. State R. 15; *Hays* v. *Risher*, 32 Penn. State. R. 169.)

Roads, leading from the main road which runs through the country to the residences or farms of individuals, are of public concern and under the control of the Government. Taking private property for the purposes of such roads is not a taking for private use. They are open to every one, who may have occasion to use them, and are therefore public. Their character as public roads is unaffected by the circumstance, that in view of their situation, they are but little used and are mainly convenient for the use of a few individuals, and such as may have occasion to visit them socially or on matters of business, nor by the circumstance that in view of such conditions the Legislature may deem it just to open and maintain them at the cost of those most immediately concerned instead of the public at large. The object for which they are established is none the less of a public character, and therefore within the supervision of the Government. To call them "private roads" is simply a legislative misnomer, which does not affect or change their real character. By-roads is a better name for

them and one which is less calculated to mislead the uninitiated.

The point made by the respondent, to the effect that the statute is unconstitutional. because it does not provide compensation for the land taken for the purposes of the road, is not tenable. The law applicable to roads in Santa Clara County is found in the Act of the 28th of March, 1864, (Statutes, p. 248,) and sections one, two, three, seven, eight, nine, eleven, twelve, fourteen, seventeen, eighteen, nineteen and twenty of the general Act of the 16th of May, 1861. (Statutes, p. 389.) The defect in the Act of 1861, noticed by us in *Curran* v. *Shattuck*, 24 Cal. 430, is obviated in the Act of the 28th of March, 1864, (Secs. 3, 4, 5, 6,) where provision is made for the assessment and payment of damages.

The demurrer, however, was properly sustained upon the ground that the matter of the plea or defense of justification is insufficient. It is not necessary to notice all the points made by the respondent under this head. It is well settled that a party who claims a title or right, of the character set up by the appellants, must show a strict compliance with all the provisions of the statute. This the appellants have failed to do. The statute, among other things, requires that the chainman and marker employed in the survey by the Viewers shall be sworn before proceeding with the survey. It does not appear from the answer that this was done, nor does it appear that the appellant complied with the order of the Board of Supervisors in respect to gates. The Legislature has provided what shall be done in those respects, and the Courts cannot excuse a non-compliance therewith upon the ground of immateriality.

Judgment affirmed.

Mr. Justice RHODES did not express any opinion.