Filed 3/16/15  Campbell v. State of California CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| RICHARD W. CAMPBELL, JR. et al., | C070369 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVCS 08-2421) |
| v. | |
| STATE OF CALIFORNIA, etc., | |
| Defendant and Respondent. | |

Plaintiffs alleged the State of California overburdened a private right-of-way it and its invitees used to access state property.  The trial court granted summary judgment against the plaintiffs after excluding their evidence and determining they had not submitted evidence of a disputed issue of material fact.  We affirm the judgment.

UNDISPUTED FACTS AND PROCEDURAL HISTORY

The Sutter Buttes are a small, roughly circular mountain range in Sutter County. North Butte Road runs along the range's northern edge.  A private road running south

1

from North Butte Road is the only access to an area inside the Sutter Buttes known as Peace Valley.

In 1928, the owners of property in Peace Valley gained access to the private road and North Butte Road by an easement deeded to them by the property owners to their north whose lands included the private road. The deed granted to the southern landowners "a continuous and unbroken right of way as and for a private road, together with the incidents thereto, on over and across" the northern owners' properties. Plaintiffs, Richard W. Campbell, Jr., and Deborah Campbell Killips, now own one of the servient tenements burdened by the 1928 easement.

In 2003, the State of California, through the Department of Parks and Recreation (the Department), purchased most of one of the dominant tenements in Peace Valley, consisting of approximately 1,785 acres. The Department purchased the Peace Valley property "for park purposes and it is the Department's goal to eventually open this park to public use." The Department accesses its property (the Park) via the private road. Due to "physical limitations associated with the existing easement," the Department uses the private road only for ingress and egress to the Park by itself and escorted, invited guests and tours.

The Park is not open to the general public. The Department maintains a locked gate where the private road crosses into the Park. In order for tour groups or members of the public to enter the Park and access it via the private road, they must first apply to the Department and receive a special event permit. This permit is the Department's express permission to access the Park. With one exception, no one is allowed to enter the Park without a permit. The exception allows tour groups or members of the public to access the Park when they have obtained permission from some other landowner in the area who has a right to use the private road. However, if such people intend to utilize the Park, and they charge money for their tours, they, too, must obtain a special event permit.

Plaintiffs filed this action in 2009 to quiet title and for declaratory and injunctive relief. They allege the Department is using the private road in excess of the 1928 easement's scope by allowing access to members of the public and for reasons other than those appropriate for a private road providing access to rural, noncommercial property. Plaintiffs contend the Department is seeking to expand the private road easement from agricultural uses to recreational uses and tourism. They assert the 1928 easement was historically used for private sheep and cattle ranching, other agricultural uses, and access to private residences. They allege the Department has overburdened the easement by conducting approximately six tours per year, allowing school groups to visit the Park occasionally, holding picnics for Park employees and volunteers, and conducting special tours for special individuals. Other groups and members of the public are increasingly using the private road and accessing the Park through other landowners' properties, and the Department is allegedly not supervising or escorting those tours or requiring special event permits.

Plaintiffs seek a judicial determination of the 1928 easement's scope and, in particular, whether the Department may allow members of the public to use the private road. They also seek a resolution of alleged disputes over the road's maintenance, dust creation, and interference with plaintiffs' agricultural activities purportedly caused by the Department's use of the road. Plaintiffs also seek injunctive relief, asserting they will suffer irreparable harm due to the loss of privacy, and because of the exposure to liability from, and the disruption of, lawful farming operations, including the spraying of pesticides, if the Department's use of the road is not enjoined.

The Department moved for summary judgment against the complaint, and the trial court granted the motion. It held there were no disputed issues of material fact, and the Department's use of the private road was expressly permitted by the 1928 easement. The court declared "the 1928 easement grants to [the Department] the right to use the private road for ingress and egress to its property by itself, its invitees and those having business

3

with [the Department]. Individuals and groups using the 1928 easement with [the Department's] permission including individuals and groups coming to [the Department's] property for tours of the property, are invitees of [the Department]. These invitees fall within the scope of the 1928 easement. While [the Department] may not use the 1928 easement for purposes other than ingress and egress to its property, such as to dig trenches or lay pipe, [the Department] may invite whatever individuals and groups it wants to access its property via the easement across plaintiffs' property and plaintiffs cannot block such people from accessing [the Department's] property via the easement."

As part of ruling on the motion, the trial court sustained the Department's objections against evidence plaintiffs had attempted to introduce. The court also held there was no evidence to support plaintiffs' allegations of a controversy regarding maintenance of the road, dust creation, or interference with plaintiffs' agricultural activities.

DISCUSSION

I

*Exclusion of Plaintiffs' Evidence*

As part of their opposition to the Department's motion for summary judgment, plaintiffs submitted various declarations, a deposition transcript, and copies of documents as evidence. On reply, the Department filed 28 written objections to plaintiffs' evidence. The trial court sustained 18 of the objections, and dismissed the remaining ten as moot. The trial court's ruling eliminated most of plaintiffs' evidence. Plaintiffs contend the trial court sustained the objections without granting them an opportunity to respond. They also assert the court's rulings were substantively in error.

The Department contends plaintiffs have forfeited these arguments, as they did not respond to the Department's objections at trial and now raise their arguments in favor of admitting their evidence for the first time. We agree with the Department that plaintiffs

4

have forfeited this issue. There is no evidence in the record showing plaintiffs asserted at trial the arguments they raise here for admitting their evidence.

"We have long held that the proponent of evidence must identify the specific ground of admissibility at trial or forfeit that basis of admissibility on appeal." (*People v. Ervine* (2009) 47 Cal.4th 745, 783.) Under this rule, a defendant is precluded from arguing on appeal that evidence ruled inadmissible at trial should have been admitted where defendant's trial counsel did not specifically raise the ground for admitting the evidence. (*People v. Fauber* (1992) 2 Cal.4th 792, 854, cert. denied (1993) 507 U.S. 1007 [123 L.Ed.2d 272] [evidence the trial court ruled was inadmissible as hearsay was in fact not hearsay, but counsel's failure to raise the specific ground supporting admission at trial precluded raising it on appeal].)

Plaintiffs contend the trial court did not give them an opportunity to respond to the Department's objections and raise their arguments. They assert their trial counsel was prepared to argue against the objections at the hearing on the motion, "but was not permitted to do so." We cannot verify the truth of that statement, as plaintiffs failed to submit a reporter's transcript of the hearing for our review. In the absence of a transcript, we presume all facts necessary to support the trial court's order, and we affirm the court's rulings on that basis. (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)[1]

What evidence appears in the record on this issue indicates the trial court in fact gave plaintiffs an opportunity to respond to the Department's objections. Approximately six weeks after the trial court heard the Department's summary judgment motion and took it under submission, plaintiffs' counsel wrote to the court and requested an

---

[1]    After filing their notice of appeal, plaintiffs filed a motion to use a settled statement instead of a reporter's transcript. The trial court denied the motion. The court's calendar had informed plaintiffs an official court reporter would not be provided during a hearing on a law and motion matter. The court "ha[d] no idea why plaintiff[s] failed to provide a court reporter to the hearing." Plaintiffs do not challenge this ruling.

5

opportunity to respond to the Department's objections. Counsel stated plaintiffs had not had an opportunity to respond because the court took the matter under submission so the parties could seek mediation. Counsel requested the court's permission to respond to the objections either orally or in writing. The letter was not written under oath.

The trial court responded to the letter by minute order and denied the request. It strongly disagreed with plaintiffs' assertion they were not given an opportunity to respond to the objections. It wrote: "On September 7, 2011, defendant, [the Department], filed timely evidentiary objections to plaintiffs' evidence submitted on August 18, 2011[.] [¶] [] Plaintiffs had every opportunity to address those evidentiary objections during the argument at the September 12, 2011 hearing; and [¶] [] [w]hile I encouraged mediation, the presentation, submission and ruling on the motion were never conditioned in any way, shape or manner on the parties' decision to mediate. [¶] The request to respond to the evidentiary objections is denied."

The only evidence in the record thus indicates the trial court gave plaintiffs "every opportunity" to respond to the Department's objections. Nothing in the record shows they utilized that opportunity. Because plaintiffs failed to raise at trial the grounds they raise here for admitting their evidence, they have forfeited their claims of evidentiary error.

II

*Triable Issues of Material Fact*

Plaintiffs contend they established triable issues of material fact that should have precluded an award of summary judgment and allowed them to proceed to trial on their causes of action for quiet title and declaratory relief. Their evidence allegedly showed the Department had changed the dominant tenement's use from agriculture to a park, and had increased the use of the private road by inviting members of the public to use it. These facts, plaintiffs argue, show the Department has exceeded the scope of the 1928

6

easement and unreasonably increased, or surcharged, the servient tenement's burden. (See 6 Miller & Starr, Cal. Real Estate (3d ed. 2011) Easements, § 15:55, p. 15-179.)

The Department contends the undisputed evidence shows it has acted within the scope of the easement. It argues the easement allows the Department to use the private road for ingress and egress by itself and its invitees, and the undisputed evidence shows it has used the easement only for those purposes. The Department does not expressly state it may invite as many people to use the road as it chooses, but we infer the Department maintains that position. We do so based on the Department's arguing it is currently using the road well within its capacity, and its quoting a New York appellate case's interpretation of an easement granted to the state to use a private road as not restricting how often the state's invitees could use the road. (*Stonegate Family Holdings, Inc. v. Revolutionary Trails, Inc.* (N.Y.App. 2010) 73 A.D.3d 1257, 1261-1262.)

We conclude the Department has demonstrated plaintiffs cannot establish one element of their causes of action, and we affirm the award of summary judgment on that basis.

Our scope of review is the same as the trial court's. (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.) A trial court must grant summary judgment " 'if all the papers submitted show' that 'there is no triable issue as to any material fact' ([Code Civ. Proc.,] § 437c, subd. (c)) -- that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations] -- and that the 'moving party is entitled to a judgment as a matter of law (Code Civ. Proc., § 437c, subd. (c)). . . . In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom ([Code Civ. Proc.,] § 437c, subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

As the party moving for summary judgment, the Department bears "the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.) To satisfy that burden, the Department must establish that one or more elements of plaintiffs' causes of action " 'cannot be established,' " or that " 'there is a complete defense' " thereto. (*Ibid*.)

Conversely, plaintiffs bear the burden of setting forth specific facts showing a triable issue of material fact exists as to their claims or a defense thereto. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 10:224.1, p. 10-98.) "The burden of persuasion does not shift. Rather, when the court rules, one party has met its burden of persuasion and the other has not." (*Id.* at ¶ 10:224.2, p. 10-99; see *Aguilar, supra*, 25 Cal.4th at pp. 851-852.)

"All that the defendant need do is to 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff[s]. (Code Civ. Proc., § 437c, subd. (*o*)(2).) In other words, all that the defendant need do is to show that the plaintiff[s] cannot establish at least one element of the cause of action -- for example, that the plaintiff[s] cannot prove element *X*. Although [it] remains free to do so, the defendant need not [itself] conclusively negate any such element -- for example, [itself] prove *not X*. . . . The defendant has shown that the plaintiff[s] cannot establish at least one element of the cause of action by showing that the plaintiff[s] do[] not possess, and cannot reasonably obtain, needed evidence: The defendant must show that the plaintiff[s] *do[] not possess* needed evidence, because otherwise the plaintiff[s] might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff[s] *cannot reasonably obtain* needed evidence, because the plaintiff[s] must be allowed a reasonable opportunity to oppose the motion (Code Civ. Proc., § 437c, subd. (h)). . . .

"Summary judgment law in this state, however, continues to require a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff[s] do[] not possess, and cannot reasonably obtain, needed evidence. . . . For the

8

defendant *must* 'support []' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' (Code Civ. Proc., § 437c, subd. (b).) The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff[s'] cause of action. The defendant may also present evidence that the plaintiff[s] do[] not possess, and cannot reasonably obtain, needed evidence -- as through admissions by the plaintiff[s] following extensive discovery to the effect that [it] has discovered nothing. But, as *Fairbank v. Wunderman Cato Johnson* (9th Cir. 2000) 212 F.3d 528 concludes, the defendant *must* indeed present 'evidence': Whereas, under federal law, 'pointing out through argument' (*id.* at p. 532) may be sufficient [citation], under state law, it is not." (*Aguilar, supra,* 25 Cal.4th at pp. 853-855, fns. omitted, original italics.)

Here, the Department met its burden. It submitted sufficient evidence showing plaintiffs did not possess, and could not reasonably obtain, evidence necessary for them to win their cause. To obtain quiet title and declaratory relief against the Department's alleged overuse of the easement, plaintiffs had to set forth facts establishing the scope of the easement and showing the Department had exceeded that scope. The Department has adequately shown plaintiffs cannot make that showing.

We turn first to the easement's scope. "Generally, the extent of an easement may not be enlarged so as to increase the burden of the servient property." (*McCarty v. Walton* (1963) 212 Cal.App.2d 39, 46.) Because an unreasonable increase of the easement's burden on the servient tenement may ripen into a prescriptive right, such an increase is a nuisance that can be enjoined by the servient tenement's owner. *(Krieger v. Pacific Gas & Electric Co.* (1981) 119 Cal.App.3d 137, 145-147.) The issue of whether a change in use is excessive and a surcharge is generally a question of fact. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 703.)

An easement's scope is determined by the terms of the grant, which, in this case, was made expressly by a deed. (Civ. Code, §§ 806, 1066.) "With deeds as any other

9

contracts, '[t]he primary object of all interpretation is to ascertain and carry out the intention of the parties. [Citations.] All the rules of interpretation must be considered and each given its proper weight, where necessary, in order to arrive at the true effect of the instrument. [Citation.]' (*Burnett v. Piercy* (1906) 149 Cal. 178, 189, Civ. Code, § 1066; see Civ. Code, § 1635 et seq.; Code Civ. Proc., § 1856 et seq.)" (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238.)

Constructing a deed "requires, in the first instance, careful examination of the language in the original conveyance. If the intent of the parties is clear, that will control." (*City of Manhattan Beach v. Superior Court, supra,* 13 Cal.4th at p. 235.) If we find ambiguity after "canvass[ing] the four corners of the deed" (*id.* at p. 245), we may turn to any relevant statutory rules governing the interpretation of deeds for assistance and, if necessary, any extrinsic evidence to the extent it informs the parties' intent. (*Id.* at pp. 235, 242, 246.)

The words used in the deed "are to be understood in their ordinary and popular sense. (Civ. Code, § 1644; see also Code Civ. Proc., § 1861.)" (*Butler v. City of Palos Verdes Estates* (2005) 135 Cal.App.4th 174, 181.) The deed's language of conveyance here is short. It reads the grantors (the plaintiffs' predecessors) "do hereby grant unto [the grantees (the Department's predecessors)], their heirs and assigns forever, a continuous and unbroken right of way as and for a private road, together with the incidents thereto . . . ." The right-of-way is a 20-foot-wide strip of land. The grant was conditioned on the grantors, their heirs and assigns retaining "the right and privilege perpetually to use and enjoy said right of way jointly with [the grantees], their heirs and assigns."

The Department argues the meaning of the term "private road" is clear on its face and unambiguous because in 1928 when the deed was executed, the term was defined by statute. The statute, known then as the "California vehicle act" (Stats. 1923, ch. 266, § 163, p. 571), defined the terms " '[p]rivate road or driveway' " for purposes of that act as

10

"[e]very private road, driveway or place used by the owner, his guests and those having business with the owner and not intended to be otherwise used, or otherwise used by the general public." (Stats. 1923, ch. 266, § 22, p. 520.)[2]

We disagree with the Department's argument that the 1923 statute defines the term "private road" as used in the easement. There is no evidence the parties to the 1928 easement incorporated the 1923 statutory definition into the deed. Nothing in the language of the deed indicates the parties intended to adopt the 1923 statute's definition as their own. There also is nothing in the statute that imposes its definition on private conveyances. The statute applied only to the term's use in the California vehicle act.

Moreover, the 1923 statute's definition of a private road was not the only one provided by statute at that time. Former Political Code section 2692, which allowed counties to condemn private land for a "private road," was interpreted to define a private road as a road open to the public but built for and maintained by those few private individuals who benefited most from the road. (*Sherman v. Buick* (1867) 32 Cal. 241, 252-253.)[3] The existence of this conflicting statute at the time the deed was executed,

---

[2]     The Vehicle Code currently defines a " 'private road or driveway' " for its purposes as "a way or place of private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other members of the public." (Veh. Code, § 490.)

[3]     Former Political Code section 2692 granted a board of supervisors authority to condemn private property for what the statute referred to as "[p]rivate or by-roads" and private ways for irrigation canals. (Stats. 1883, ch. 10, § 1, p. 15, as amended by Stats. 1913, ch. 61, § 1, p. 62 & Stats 1919, ch. 73, § 1, p. 117; repealed by Stats. 1943, ch. 368, pp. 1604, 1895.) To insulate the statute from constitutional attack, the Supreme Court ruled a private road for purposes of the statute was "but a public road by another name." (*County of Madera v. Raymond Granite Co.* (1903) 139 Cal. 128, 134.) The term "private road" developed historically to distinguish between roads that served the public generally and those that benefited only particular individuals. Both types were open to the public, but the government paid to maintain public roads, and individuals directly interested in roads built primarily for their benefit maintained private roads. Former Political Code section 2692 incorporated this distinction in authorizing governments to

along with the lack of evidence showing the parties intended to rely upon any statutory definition, demonstrate we cannot rely solely on statutory definitions in this case to determine the meaning of "private road" as used in the deed.

Like the grantors of the 1928 easement, the trial court did not refer to or rely upon any statutory definition of the term "private road." The court relied solely upon the deed's language to conclude "the 1928 easement grants to [the Department] the right to use the private road for ingress and egress to its property by itself, its invitees and those having business with [the Department]." This definition, however, does not define the *extent* to which the Department may use the private road. By describing the road as "private," did the original grantors and grantees refer only to an owner's ability to control access without limiting the number of an owner's invitees, or did they, based on their use at the time, also infer limits on the number or type of persons an owner may invite to use the road?

When the extent of an "express easement[] . . . is in question" (*Camp Meeker Water System, Inc. v. Public Utilities Com.* (1990) 51 Cal.3d 845, 867 (*Camp Meeker*), the extent of the easement " ' "is to be inferred from the circumstances which exist at the time of the conveyance . . . . Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from the future uses of the dominant tenement. What the parties might reasonably have expected

condemn private property for such "private roads." (See *Sherman v. Buick, supra,* 32 Cal. at pp. 252-253.) Remnants of this distinction exist today. A county may condemn land for developing a " 'private byroad,' " which is defined as a road built to provide access to parcels of contiguous private land of more than 100 acres which have been cut off by a change in the course of a navigable stream. (Sts. & Hy. Code, §§ 1050-1054.) Privately owned roads may also be open to public use by means of a permanent public easement. (See, e.g., Sts. & Hy. Code, § 1160, subd (c).)

is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement . . . ." (Rest., Property, § 484, comment b.) [¶] Accordingly, in determining the intent of the parties as to the extent of the grantee's rights . . . consideration must be given not only to the actual uses being made at the time of the severance, but also to such uses as the facts and circumstances show were within the reasonable contemplation of the parties at the time of the conveyance.' " (*Camp Meeker, supra,* 51 Cal.3d at pp. 866-867.)

Unfortunately, neither the Department nor plaintiffs submitted admissible evidence on this material issue. Because of the trial court's and our rulings excluding plaintiffs' evidence, we have before us no evidence of how the original parties to the easement used the private road or may have foreseen its future use. The facts introduced by plaintiffs and admitted by the trial court attest primarily to the Department's recent increased use of the private road. What little evidence of historical use that was submitted by plaintiffs and admitted by the trial court was not shown to relate to 1928 when the easement was created. Plaintiff Richard W. Campbell, Jr., stated the private road was historically used for cattle ranching, agriculture, and private residences, but he gave no indication of the historical time he was referring to, or his source for that information. A neighbor, Mark Evans, stated the private road was used for accessing three residences and for agricultural uses before the Department purchased the Park, but he provided no information on the properties' use in 1928.

Although the Department also did not submit evidence of the easement's historic use, it did submit evidence showing plaintiffs do not possess and cannot reasonably obtain evidence of the original parties' use of the private road at the time of the conveyance in 1928. Through discovery, plaintiffs admitted in responses to requests for admission they had no knowledge of the scope of the private road's use between 1918 and 1938. They also admitted they had no knowledge of any events involving use of the

13

road that occurred between 1906 and 1940. This evidence, introduced by the Department, showed plaintiffs could not establish a fact material to their causes of action -- the scope of the easement at its formation.[4]

We thus are left with a conveyance that, other than saying it was for a private road, is silent as to its scope. "A contract extends only to those things concerning which it appears that the parties intended to contract. [Citation.] In construing a contract, the court's function is to ascertain and declare what, in terms and substance, is contained in that contract, and not to insert what has been omitted. [Citation.] The court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there. [Citation.] Courts will not add a term about which a contract is silent. [Citation.]" (*Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486, italics omitted.)

Because the deed does not define its scope beyond stating it is for a private road, and because no admissible evidence exists to aid in interpreting the deed, we concur in the trial court's interpretation and its award of summary judgment to the Department. Without evidence of the easement's scope limiting the number or type of the

---

[4]     Part of plaintiffs' excluded evidence was a transcript of a deposition of the late Mary Brady, a former owner of some of the Park property, in which she described her family's use of the land and the road in the 1920's. The Department objected to admitting the transcript because the document was submitted to contradict plaintiffs' admission of not knowing the property's prior use, and because it was inadmissible hearsay. The parties assert each other had copies of this transcript before plaintiffs served their responses to the request for admissions, and that fact either supports or eliminates the trial court's exclusion of the transcript. Neither side submitted evidence supporting these contentions, but the dispute is irrelevant. The trial court excluded the transcript from evidence without stating its reasons, and we have affirmed that decision due to the plaintiffs' forfeiture and the lack of a reporter's transcript.

Department's invitees, plaintiffs are unable to show the Department overburdened the easement, and are thus unable to recover on their complaint.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the Department. (Cal. Rules of Court, rule 8.278(a).)


     NICHOLSON    , Acting P. J.


We concur:


     HULL     , J.


     ROBIE     , J.