[Civ. No. 4008. Third Appellate District.—November 14, 1930.]

THE PEOPLE, Respondent, v. GEORGE W. OLSEN et al., Appellants.

Roy L. Daily for Appellants.

Harry A. Encell for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED · THE OPINION OF THE COURT.—This is an appeal on the part of the defendants George W. Olsen and Nelson A. Olsen, from a decree in a suit involving eminent domain.

The action was instituted by the state of California through its department of public works to condemn a strip of land in Plumas County for highway purposes. The appellants own a tract of land east of the town of Chester bordering on the northern shore of Lake Almanor in that county. The Great Western Power Company owns most of the land involved in this controversy. It was a party defendant in this action. That corporation had acquired water rights in and about Lake Almanor for hydro-electric power purposes, including the privilege of flooding the lands adjacent to the lake. The Power Company was about to construct a new dam at the southern extremity of the lake where it empties into the north branch of Feather River. It was anticipated this project would result in raising the water of Lake Almanor to the 4,500-foot contour which would submerge the then existing Red Bluff-Susanville highway along the northern border of the lake and flood most of the land belonging to the appellants. The state therefore planned to improve the highway in that vicinity and construct a causeway from the town of Chester easterly a distance of about a mile and a third across Big Meadows and over a depression of considerable depth where Mud Creek empties into the lake. Plans for this causeway were accord-

ingly adopted by the highway commission. The elevation of this causeway was to be constructed at least six feet above the level of the 4,500-foot contour. The surface of the roadway was to be twenty-four feet in width. The fill was to have a uniformly increasing base which reached a maximum of eighty feet in width at the lowest point of the swale. At this locality the fill was thirty-five feet in depth. The construction of this causeway therefore required an enormous quantity of material. It was to cost approximately $200,000. The highway commission adopted a resolution declaring the purpose and necessity of improving the highway, constructing the causeway and acquiring rights of way therefor over the lands of appellants and the Great Western Power Company. This causeway crossed two forty-acre tracts of land belonging to the appellants. The value of this land was estimated at from $3 to $400 per acre. The first piece of appellants' land sought to be condemned extends easterly from the town of Chester and is situated above the floodwater contour. It is gore-shaped, 1300 feet in length with a maximum width of 175 feet and contains 2.31 acres of land. A quarter section of land belonging to the Great Western Power Company intervenes between this gore-shaped piece of appellants' land and their other tract which is sought to be condemned. This latter strip of land is 1300 feet in length with an average width of 300 feet and an area of about ten acres. All of the balance of the land belongs to the Power Company.

This suit was commenced October 11, 1928. It was tried before a jury. The plaintiff established a *prima facie* case based upon the right of eminent domain. In an effort to show "that the use is a private use and not a public use", the appellants offered in evidence an agreement between the California Highway Commission and the Great Western Power Company, dated May 27, 1926. This evidence was excluded on the ground that it was incompetent. The document was marked for identification. From this agreement it appears that the Great Western Power Company was actively engaged in raising the flood line of its Lake Almanor reservoir which would of necessity overflow the highway then in use north of the lake. The state department of public works planned to improve that portion of the highway across the lands in controversy in this action at an

expense of $14,796. The Great Western Power Company agreed to construct the causeway according to adopted specifications, at its own expense except that the state commission agreed to contribute $15,796 toward the entire cost and, at its own expense, also agreed to surface the roadbed and procure all necessary rights of way. The Power Company agreed to convey to the state a perpetual easement over its portion of the land for highway purposes and to "defray any cost of said right of way over lands not owned by second party (Great Western Power Company) in the amount over and above the cost of the standard highway width of eighty (80) feet".

Pursuant to this agreement the Great Western Power Company promptly proceeded to construct the causeway "in the summer of 1926". From the record and the briefs of appellants we assume the highway was completed before this cause was commenced. No action appears to have been taken by the appellants to stop the work.

In the construction of the causeway by the Great Western Power Company borrow-pits were dug along both sides of the condemned strips of land. These pits were excavated to a depth of about seventeen feet at the lowest points. The sand and gravel thus procured were used in the construction of the causeway adjacent to the pits from which they were obtained.

With the purpose of showing special damages to the property condemned, and not on account of severance damages, the appellants asked a witness at the trial "how much material was excavated" from these borrow-pits. An objection to this question was sustained on the ground that it was incompetent. The evidence of the value of the land taken ranged from $3 per acre to $400. The sum of $3 per acre was fixed on the theory that the land was suitable only for grazing purposes. One of the appellants testified the largest tract taken was worth $150 an acre. The estimate of $400 an acre was based on the theory that the smaller tract adjacent to the town of Chester might be worth that sum for subdivision purposes for town lots. The jury awarded the Power Company an aggregate sum of $500. The appellants were given $200 for the gore-shaped piece and $500 additional for the larger strip. In special issues which were submitted to the jury, it was found that no

damages accrued by virtue of the severance to any of the land not taken.

The appellants contend that, (1) the condemnation of land for highway purposes is limited to eighty feet in width, (2) the resolution of intention which was adopted by the commission is not conclusive evidence that the proposed condemnation of land is for public use and that the court erred in precluding them from proving that the highway was intended partially for the private use of the Great Western Power Company and the Red River Lumber Company which subsequently obtained a right of way over the causeway for its tracks, (3) the resolution of condemnation of land was for highway purposes only and not for excavating pits from which to obtain sand and gravel and the court erred in not permitting them to prove the quantity and value of the materials thus taken.

There is no statutory limitation of eighty feet in width for public highways. Section 2620 of the Political Code merely prescribes forty feet as the minimum width of a public highway. That section reads in part: "The width of all public highways . . . shall be *at least* forty feet." This language does not prohibit the acquiring of land for highway purposes in excess of eighty feet in width. The highway commissioners have a discretion in fixing the width of a public highway. This discretion may not be interfered with so long as it is not less than forty feet in width and is not wider than is reasonably necessary for highway purposes under the circumstances of the particular case which is involved.

It is conceded by the appellants that the resolution which was adopted by the highway commission pursuant to the statutes of California for 1927, page 463, section 9, which is an amendment of section 363h of the Political Code, is conclusive evidence of the necessity for the construction of the highway in question. It is, however, asserted that this statute is not conclusive evidence of the fact that the proposed improvement is for use as a public benefit; that this is a question for judicial determination. It is therefore claimed that since the causeway which is involved in this action was constructed partially for the benefit of the Great Western Power Company and that the Red River Lumber Company was granted a right of way over it for a logging

track, that the right to condemn the property failed, and that the court erred in refusing to permit the appellants to prove the causeway was not for public use alone.

Section 363h of the Political Code, as amended, authorizes the department of public works to condemn real property for any of the purposes relating to eminent domain which are specified in section 1238 of the Code of Civil Procedure, after first adopting a resolution to the effect that the public interest and necessity require the acquisition of the property described and the construction of the proposed improvements. The statute then provides:

"Said resolution shall be conclusive evidence:

"(a) Of the public necessity of such proposed public improvement; .

"(b) That such property is necessary therefor; and

"(c) That such proposed public improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

█ The right to exercise the doctrine of eminent domain is bestowed by the People in their sovereign capacity upon the legislature. The power to declare what uses of property shall constitute a public benefit rests with the legislature. (1 Lewis on Eminent Domain, 563, sec. 238; 10 Cal. Jur. 295, sec. 12.) █ The maintenance of roads is declared by our legislature to constitute a public use of property. (Sec. 1238, Code Civ. Proc.) Highways constitute a public use of property of the highest character. (10 R. C. L. 39, sec. 35; *County of San Mateo* v. *Coburn,* 130 Cal. 631, 635 [63 Pac. 78, 621]; *Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700 [67 L. Ed. 1187, 43 Sup. Ct. Rep. 689]; 20 C. J. 559, sec. 43.)

█ By the terms of section 363h of the Political Code, as amended in 1927, the legislature has delegated to the highway commission, which thereby becomes a *quasi*-judicial body for that purpose, the exclusive authority to determine, (1) the public necessity for a designated highway, (2) that particularly described property is necessary therefor, and (3) that the proposed improvement is planned and located in a manner which is most compatible with the greatest public good and the least private injury. These matters having been judicially determined by the commission in the manner provided by law, a resolution to that effect becomes

conclusive evidence which, in the absence of fraud, bad faith or an abuse of discretion, may not be disputed. (*County of San Mateo* v. *Coburn*, 130 Cal. 631 [63 Pac. 78, 621]; *Rindge Co.* v. *County of Los Angeles*, 262 U. S. 700 [67 L. Ed. 1186, 43 Sup. Ct. Rep. 689]; 20 C. J. 626, sec. 112].) ▇ Except when the legislature has limited the authority of the commission it may determine, within reason, what property and how much is necessary for the designated public use.

Some authorities fail to distinguish between the amount of land and the necessity for condemning property as contrasted with the proposed purpose for which it is to be used. (1 Lewis on Eminent Domain, 413, sec. 163.) ▇ The necessity for the construction of a highway at the place designated and in the manner determined by the commission, together with the amount of land required therefor are matters which were conclusively established by the adoption of the resolution. (*County of San Mateo* v. *Coburn*, 130 Cal. 631 [63 Pac. 78, 621]; *Pool* v. *Simmons*, 134 Cal. 621 [66 Pac. 872]; *Mendocino Co.* v. *Peters*, 2 Cal. App. 24 [82 Pac. 1122].) ▇ The question as to whether the land was to be devoted to a public use as distinguished from a mere private service may, under adequate pleadings, become a proper issue for the judicial determination of the court. We are, however, of the opinion this issue was not raised by the pleadings in the present case. To raise this issue it is necessary to specifically charge fraud, bad faith or an abuse of discretion on the part of the tribunal to which the determination of the necessity of resorting to eminent domain is delegated. This was not done in the present case. The appellants' answer does not deny that the property was to be used for a public purpose. The answer contains no affirmative allegation concerning the nature of the use of the property. It merely denies "that all of said land described, or any land . . . is *necessary* for the public use, or any use . . . as a right of way . . . " This language does not constitute a denial that the land was intended to be used for a public purpose. It is a mere denial that it is required for that purpose. This language is inadequate to raise the issue of fraud, bad faith or abuse of discretion. The facts constituting bad faith or fraud must be specifically alleged. The court therefore properly sustained objections to appellants' offer to prove that the high-

way was constructed in whole or in part for the benefit of private interests.

Nor were the appellants entitled to prove, as an element of damage, in addition to the general damage sustained by virtue of the taking of the condemned strip of land for highway purposes, plus any severance damages which might have been suffered, the market value of sand and gravel which were taken from the borrow-pits on the borders of the condemned land. The value of the sand and gravel was included in the general damages assessed in the taking of the land. Moreover, the appellants assert that the causeway was completed before the condemnation proceedings were commenced. The Great Western Power Company constructed the causeway and dug the pits complained of. The appellants took no action to stop the work. They have no cause for special damages against the plaintiff for the removal of the sand and gravel by another party prior to the institution of the eminent domain proceedings. Their remedy for this alleged trespass was to have enjoined the Power Company from removing the sand and gravel or to eject the company from the premises.

Title to land acquired by condemnation for highway purposes vests in the public only an easement or right of way, together with the necessary incidents for the construction, maintenance and reasonable enjoyment of the same. (Sec. 2631, Pol. Code; *Gurnsey* v. *Northern California Power Co.,* 160 Cal. 699 [36 L. R. A. (N. S) 185, 117 Pac 906].) The sand and gravel which were taken from the borders of the land condemned for use in constructing and maintaining the highway at that point were appurtenant and incident to the use for highway purposes. "A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way . . . " (Sec. 662, Civ. Code.)

The gravel and sand which were taken from the borders of the condemned strips of land for use in constructing the highway at that point were necessary and incidental to the reasonable enjoyment of the easement for which the land was condemned. The taking of this sand and gravel created no added burden on the fee retained by the owners, and they are therefore entitled to no special damages on that account. (13 R. C. L. 128, sec. 112.) No special

damages were pleaded and none may be recovered in this action. It must be assumed the appellants were fully compensated for the market value of the land taken. Under the circumstances of this case it must be assumed this award of damages included the value of the materials taken from the condemned land and used for highway purposes at that point. No evidence was adduced and no offer was made to prove there was any market in that vicinity for the sand and gravel which were taken from the pits. The evidence indicates that the land is of small value. No effort was made to show that the fee was injured or the land damaged by the taking of the sand and gravel. Nor was any effort made to show that these excavations would damage the adjoining land from which the condemned strips were severed. The appellants were fully compensated by the general award of damages. They were awarded the market value of the land.

 Ordinarily the market value of the land which is taken in eminent domain estimated at the time of the commencement of the action, is the measure of damages for the condemnation thereof. (*City of Stockton* v. *Vote,* 76 Cal. App. 369 [244 Pac. 609]; 10 Cal. Jur. 338, sec. 54; 10 R. C. L. 128, sec. 12.) In estimating the market value, any and all purposes to which the land may reasonably be adapted should be considered. (*Sacramento So. Ry. Co.* v. *Heilbron,* 156 Cal. 408 [104 Pac. 979].) When the land is so situated that it is reasonably suitable for subdivision purposes into city or town lots which adaptability would enhance its value, that fact should be taken into account in estimating the market value of the tract. But the mere prospective price of lots which might be procured by the sale thereof should not be considered when a subdivision of the tract has not actually been made. (*City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 Pac. 737].) There was no error in excluding the map of appellants' proposed subdivision into town lots, which map had not been recorded. No witness was precluded from considering the availability of the land for subdivision purposes in estimating the market value. Mr. Martin testified in behalf of the plaintiff: "I think that the town lots ought to be (worth) probably around $400 an acre." Respecting this issue, the court said: "You can cross examine him on that,

of course." No other evidence as to the value of the land for subdivision purposes was offered.

The judgment is affirmed, appellants to recover costs on appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 13, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.