[L. A. No. 25275.   In Bank.   June 16, 1959.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Respondent, v. STUART CHEVALIER et al., Defendants; RICHARD C. GOODSPEED et al., Appellants.

THE CITY OF LOS ANGELES, Respondent, v. RICHARD C. GOODSPEED et al., Appellants.

Richard C. Goodspeed, in pro. per., Paul R. Hutchinson and Vaughan, Brandlin & Baggot for Appellants.

302

George C. Hadley, William H. Peterson, Charles E. Spencer, Jr., Roger Arnebergh, City Attorney, and Peyton H. Moore, Jr., for Respondents.

SPENCE, J.—Defendants Richard C. Goodspeed and William A. Hyland, as trustee, appeal from a judgment entered in two consolidated eminent domain actions, one brought by the state and the other by the city, to extinguish certain street access rights and to acquire an easement over said defendants' land for street purposes. The takings were incidental to the construction of a freeway. The jury found that the market value of the property taken was $7,500, and that severance damages were offset by special benefits to the portion of the land which was not taken. Defendants seek a reversal on the following grounds of alleged error: (1) the striking of portions of their answer, which purported to raise special defenses of fraud, bad faith, and abuse of discretion; (2) the consolidation of the two proceedings for trial; (3) the refusal of certain instructions bearing on the measure of damages; (4) the submitting to the jury of an alleged improper form of verdict; and (5) the exclusion from evidence of a proposed plan for improving defendants' land.

The litigation involved property in a block in the city of Los Angeles, which block was bounded on the north by 98th Street, on the east by Broadway, on the south by Century Boulevard, and on the west by Olive Street. Defendants owned a strip on the southeast corner, with a frontage of 87 feet on Century Boulevard and 441.63 feet on Broadway. 99th Street formerly cut into the block, crossing Olive Street from the west, but did not continue through to Broadway. It ended at the westerly boundary of defendants' land.

A section of the new Harbor Freeway was built, running generally along Olive Street. It does not cross defendants' land but its construction resulted in the closing of the intersection of 99th Street and Olive. Access to the west along 99th Street was thereby denied to defendants and to the owners of property located in said block on 99th Street to the east of its former intersection with Olive Street.

To provide access for the landlocked parcels located on 99th Street east of its former intersection with Olive Street, the state sought to obtain an easement measuring 60 feet by 87 feet over defendants' land, for the purpose of extending 99th Street to Broadway. Defendants successfully interposed demurrers on the theory that the condemnation to provide

for this extension was beyond the power of the state with respect to the freeway project. The state and the city then entered into an agreement whereby the city agreed to condemn the easement across defendants' land. The state therefore limited its action against defendants to condemning defendants' right of access over 99th Street to and across the former Olive Street; and the city then brought the action to condemn the easement over defendants' land to extend 99th Street to Broadway.

The two actions were thereafter consolidated for trial. At the outset of the trial plaintiffs moved to strike from the defendants' answers those portions which defendants characterize as establishing ''special defenses'' of fraud, bad faith and abuse of discretion. With respect to the state's action, the allegations were that it was feasible to construct the freeway over 99th Street instead of closing off defendants' westerly access, and that in failing to so construct the freeway, the State Highway Commission acted arbitrarily and abused its discretion.

The allegations of fraud, bad faith, and abuse of discretion with respect to the city's action were more detailed. They attacked the city council's action in finding that condemning an easement across defendants' land was necessary and in the public interest. In substance, the allegations were that (1) the council abused its discretion in that (a) it failed to investigate properly the advisability of providing access to the landlocked parcels by constructing a north-south service road along the east side of the freeway, from 99th Street to 98th Street, across land available for the purpose; (b) the council's finding was ''pursuant to an agreement and conspiracy by and between said Council and the California State Highway Commission'' merely to further the commission's desires rather than to further any of the city's own interests, since the state would otherwise have to construct the described service road; (c) the council refused to hear defendants' arguments that the described service road was more in the public interest; (2) the council acted in bad faith, fraudulently, arbitrarily, and negligently in that (a) it acted in concert with and under the domination, control, and influence of state agencies, without studying or investigating for itself the necessity or desirability of the described service road as an alternative; (b) rather than for a legitimate city interest, the condemnation was for the purpose of accomplish-

ing for the state what the state was unable to do, and saving the state from having to build the described service road; (c) it refused to hear defendants' arguments that the public interest would be better served by the described service road.

After receiving in evidence the city ordinance and the commission's resolution containing the findings attacked in the answer, the court ordered the "special defenses" stricken. The question is whether the stricken allegations presented a justiciable issue.

Because eminent domain is an inherent attribute of sovereignty, constitutional provisions merely place limitations upon its exercise. (*County of San Mateo* v. *Coburn,* 130 Cal. 631, 634 [63 P. 78, 621]; *County of Los Angeles* v. *Rindge Co.,* 53 Cal.App. 166, 174 [200 P. 27].) The only limitations placed upon the exercise of the right of eminent domain by the California Constitution (art. I, § 14) and the United States Constitution (Fourteenth Amendment) are that the taking be for a "public use" and that "just compensation" be paid for such taking. Each of these limitations creates a justiciable issue in eminent domain proceedings. But "all other questions involved in the taking of private property are of a legislative nature." (*University of So. California* v. *Robbins,* 1 Cal.App.2d 523, 525 [37 P.2d 163].) The taking of property for use as a public street or highway is clearly a taking for an established public use (*Rindge Co.* v. *County of Los Angeles,* 262 U.S. 700, 706 [43 S.Ct. 689, 67 L.Ed. 1186]; 2 Nichols on Eminent Domain (3d ed.) § 7.512 [2], p. 489), even though the street or highway will bear relatively little traffic. (*Sherman* v. *Buick,* 32 Cal. 241, 255 [91 Am.Dec. 577].) There is no question, then, that the takings in the instant case are for a public use. Defendants did not allege fraud, bad faith, or abuse of discretion in the sense that the condemner does not actually intend to use the property as it resolved to use it. The stricken allegations in defendants' "special defenses" sought judicial review of the findings that the respective takings were necessary and commensurate with the greatest public good and the least private injury. These legislative determinations are frequently termed the question of necessity.

The recitations in the city ordinance and Highway Commission's resolution of the "public necessity" of the proposed improvements, that "such property is necessary therefor," and that the improvements were "planned or located in the manner which will be most compatible with the greatest

public good, and the least private injury," are "conclusive evidence" of those matters. (Code Civ. Proc., § 1241, subd. 2; Sts. & Hy. Code, § 103.) ▮▮ In upholding the constitutionality of this conclusive presumption, the United States Supreme Court said: "That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. . . . The question is purely political, does not require a hearing, and is not the subject of judicial inquiry." (*Rindge Co.* v. *County of Los Angeles, supra,* 262 U.S. 700, 709.)

However, defendants maintain that there is an implied exception to the statutory conclusive presumption. They argue that the determination of necessity is justiciable when facts constituting fraud, bad faith, or abuse of discretion are affirmatively pleaded. Plaintiffs, on the other hand, assert that implying such an exception would allow public improvements to be unduly impeded by frequent and prolonged litigation by persons whose only real contention is that someone else's property should be taken, rather than their own. Plaintiffs point out that property owners do have considerable protection in any case, since just compensation must always be paid, and since the conclusive presumption attaches only to those city ordinances that have been passed by a two-thirds vote. (Code Civ. Proc., § 1241, subd. 2.)

There is no doubt that the language used in several decisions seems to imply that the condemning body's findings of necessity are reviewable in condemnation actions when facts establishing fraud, bad faith, or abuse of discretion are affirmatively pleaded. (*People* v. *Lagiss,* 160 Cal.App.2d 28, 32-33 [324 P.2d 926]; *Orange County Water Dist.* v. *Bennett,* 156 Cal.App.2d 745, 750 [320 P.2d 536]; *Los Angeles County Flood Control Dist.* v. *Jan,* 154 Cal.App.2d 389, 394 [316 P.2d 25]; *City of La Mesa* v. *Tweed & Gambrell Planing Mill,* 146 Cal.App.2d 762, 777 [304 P.2d 803]; *People* ex rel. *Department of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925, 941 [268 P.2d 117]; *People* v. *Thomas,* 108 Cal.App.2d 832, 835 [239 P.2d 914]; *People* v. *Milton* 35 Cal.App.2d 549, 552 [96 P.2d 159].) But the cases upon which defendants rely appear to confuse the question of public use with the question of necessity for taking particular property. This is especially true in those instances in which the property owner's contention was that the condemning body was seeking to take more land than it intended to put to a public use.

(See *People* v. *Lagiss, supra,* 160 Cal.App.2d 28; *Los Angeles County Flood Control Dist.* v. *Jan, supra,* 154 Cal.App.2d 389; *People* ex rel. *Department of Public Works* v. *Schultz Co., supra,* 123 Cal.App.2d 925; *People* v. *Thomas, supra,* 108 Cal.App.2d 832; *People* v. *Milton, supra,* 35 Cal.App.2d 549. See also 2 Nichols on Eminent Domain (3d ed.) § 7.5122, p. 492.) ▬ However, the distinction between the question of public use and the question of necessity has been, and should be, recognized. (*County of Los Angeles* v. *Rindge Co., supra,* 53 Cal.App. 166, 174; *People* v. *Olsen,* 109 Cal.App. 523, 531 [293 P. 645].)

The failure of some of the cases to recognize such distinction may have resulted from adherence to the language employed in certain earlier cases decided before section 1241 of the Code of Civil Procedure was amended in 1913 to provide that the condemning body's determination of "necessity" should be "conclusive evidence" thereof. (Stats. 1913, p. 549.) That amendment, however, definitely brought the law of this state into line with that of the vast majority of other jurisdictions. (See numerous cases cited in note L.R.A. (N.S.) vol. 22, p. 64, at p. 71.) ▬ The majority rule is summarized in the cited note as follows: "If a use is a public one, the necessity, propriety, or expediency of appropriating private property for that use is ordinarily not a subject of judicial cognizance. In general, courts have nothing to do with questions of necessity, propriety, or expediency in exercises of the power of eminent domain. They are not judicial questions." Continuing on page 72, it is further said: "Once it is judicially established that a use is public, it is within the exclusive province of the Legislature to pass upon the question of necessity for appropriating private property for that use, unless the question of necessity has been made a judicial one, either by the Constitution or by statute." Such a constitutional provision is found in the Constitution of Michigan (1850) (art. 18, § 2) but as stated at page 70 in the cited note: "This provision, according to the court in *Paul* v. *City of Detroit,* 32 Mich. 108, is not found in Constitutions generally, and was never known in Michigan until the adoption of the Constitution of 1851."

▬ As above indicated, the only pertinent limitations placed by the California Constitution upon the exercise of the right of eminent domain (art. I, § 14) are that the taking be for a "public use" and that "just compensation" be paid for such taking. It is further clear that since 1913, our statutory

provisions (Code Civ. Proc., § 1241, subd. 2; see also Sts. & Hy. Code, § 103) have placed the determination of the question of "necessity" within the exclusive province of the condemning body by expressly declaring that the latter's determination of "necessity" shall be "conclusive evidence" thereof.

■ We therefore hold, despite the implications to the contrary in some of the cases, that the conclusive effect accorded by the Legislature to the condemning body's findings of necessity cannot be affected by allegations that such findings were made as the result of fraud, bad faith, or abuse of discretion. In other words, the questions of the necessity for making a given public improvement, the necessity for adopting a particular plan therefor, or the necessity for taking particular property, rather than other property, for the purpose of accomplishing such public improvement, cannot be made justiciable issues even though fraud, bad faith, or abuse of discretion may be alleged in connection with the condemning body's determination of such necessity. To hold otherwise would not only thwart the legislative purpose in making such determinations conclusive but would open the door to endless litigation, and perhaps conflicting determinations on the question of "necessity" in separate condemnation actions brought to obtain the parcels sought to carry out a single public improvement. ■ We are therefore in accord with the view that where the owner of land sought to be condemned for an established public use is accorded his constitutional right to just compensation for the taking, the condemning body's "motives or reasons for declaring that it is necessary to take the land are no concern of his." (*County of Los Angeles* v. *Rindge Co., supra,* 53 Cal.App. 166, 174, aff'd *Rindge Co.* v. *County of Los Angeles,* 262 U.S. 700 [43 S.Ct. 689, 67 L.Ed. 1186].) Any language in the prior cases implying a contrary rule is hereby disapproved. It follows that there was no error in the trial court's ruling striking the "special defenses" relating to the question of necessity.

■ Defendants next contend that the court erred in consolidating the two proceedings for trial. Code of Civil Procedure, section 1048, permits the consolidation of actions "in the discretion of the court, whenever it can be done without prejudice to a substantial right." Defendants argue that the consolidation here resulted in prejudice to their damage claims, which were based on distinct compensable takings:

the state's taking of a right of access to a street that was closed off by the freeway, and the city's taking of a strip of land for a street extension in the opposite direction, from which no benefits could be set off against the state's taking. The trial court's consolidation resulted from its view that the two takings were interrelated, both being incidental to the same freeway project. Since the state and city were acting in cooperation toward accomplishing the same improvement, there was no abuse of discretion in consolidating the actions for the purpose of allowing an evaluation of the combined effects of the project.

Defendants next claim error in the court's refusal of certain instructions on the issue of damages. The substance of their objections is that the instructions given did not make clear to the jury that severance damages to defendants' property were the possible results of each of the takings, and confused the resultant benefits which could be set off against the damages. The court's refusal to give the requested instructions was, again, in accordance with its view that the takings were interdependent parts of the same project. From a general reading of the instructions, it appears that the jury was properly instructed in computing damages on the facts of this case. Contrary to defendants' claims, it does appear that the jury was instructed that they could find damage in the state's taking of the right of access to the west. Furthermore, the court used defendants' submitted instructions for distinguishing special benefits from general benefits, and for determining the net severance damage.

Defendants next complain of the form of the verdict submitted to the jury. It was prepared by the court and combined the two proceedings into one verdict, calling for these three items: (1) value of the land taken in opening 99th Street (found to be $7,500); (2) severance damages to the balance of the land caused by the taking of the right of access and the extension of 99th Street incident to the construction of the freeway (found to be $1,500); and (3) special benefits to the remaining land (found to be $1,500). Again this was in accord with the court's view as to the interdependence of the two takings in the construction of the freeway, the propriety of the consolidation of the two proceedings for trial, and the consequent submission of the case with its integrated damage considerations for determination by the jury. Defendants argue that there was no provision in the verdict for the fixing of damages for the loss of their

right of access over 99th Street to the west, but as above indicated, provision was made for this taking in connection with severance damages, listed as the second item in the verdict.

■ Defendants finally contend that the court erred in denying admission of an architect's sketch showing a proposed improvement of their land. Defendants sought to show thereby that their property in one single piece, without the street bisection, would be suitable and valuable for building a motel and restaurant project, and that the severance ruined the prospect of such a development. It is true that evidence of a proposed use may be relevant, not to enhance damages but to show that the proposed use is feasible and, as such, might enter into a determination of the market value. (*Laguna Salada etc. Dist.* v. *Pacific Dev. Co.*, 119 Cal.App.2d 470, 476 [259 P.2d 498].) However, all the experts agreed that the land was suitable and valuable, before but not after the condemnation, for the building of a motel and restaurant project, and that this would have been a feasible plan for the use of the property. It therefore appears that the sketch of a specific plan or development could have no other purpose than to attempt to enhance damages, and its rejection was proper. (*People* v. *La Macchia*, 41 Cal.2d 738, 751 [264 P.2d 15] ; *City of Los Angeles* v. *Kerckhoff-Cuzner Mill & Lbr. Co.*, 15 Cal.App. 676, 677-678 [115 P. 654].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Peters, J., concurred.

McCOMB J.—I dissent. I would reverse the judgment for the reasons expressed by Justice Lillie in the opinion prepared by her for the District Court of Appeal in *People* v. *Chevalier*, (Cal.App.) 331 P.2d 237.

Schauer, J., concurred.

Appellants' petition for a rehearing was denied July 15, 1959. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.