[Civ. No. 18862. First Dist., Div. One. Sept. 7, 1960.]

COUNTY OF SAN MATEO, Respondent, v. MARY BAR-TOLE et al., Defendants; FREDERIC CONSTANT PREVOST et al., Appellants.

[Civ. No. 19172. First Dist., Div. One. Sept. 7, 1960.]

COUNTY OF SAN MATEO, Respondent, v. CASIMIR MONTOURSIS et al., Defendants; WILLIAM J. GIN-GHER et al., Appellants.

Joseph D. Taylor and Christin & Davis for Appellants.

Keith G. Sorenson, District Attorney, Lyle R. Edson, Chief Civil Deputy District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Respondent.

QUAYLE, J. pro tem.*—These two actions have been consolidated for disposition on appeal. Plaintiff, County of San Mateo, filed both actions to acquire property in Redwood City by proceedings in eminent domain. Answers denied that the taking was for a public purpose. The cases were consolidated for trial of the special defenses, and on hearing thereof judgments on the pleadings were entered in favor of plaintiff. The cases were then separately tried on the issue of valuation of the property taken and damages to defendants were fixed by jury verdicts. By way of a settled statement, these defendants bring before this court their appeals from judgments on the pleadings, interlocutory judgments in condemnation and final judgment of condemnation. Appellants Prevost claim error as to instructions given to the jury in

---

*Assigned by Chairman of Judicial Council.

their case whereby the date for fixing valuation of the property taken was stated to be the date when summons was issued, rather than the date of trial, more than a year thereafter. Appellants Gingher allege error in the jury trial of their case when the court admitted certain evidence of an alleged similar sale.

Appellants contend that the trial court erred in disposing of special defenses which they raised. The facts relevant thereto are as follows: On December 10, 1957, the Board of Supervisors of San Mateo County unanimously adopted a resolution to condemn the Prevost property and other parcels adjacent to it ''. . . for county purposes, to wit: For public buildings and grounds.'' On the same date a complaint in eminent domain was filed and summons issued. On January 28, 1958, the board of supervisors unanimously adopted another resolution to condemn the Gingher property and other parcels in the same block. Both resolutions contained the same terms except for the description of the property sought to be taken. The complaint was filed on the second suit on February 6, 1958, and summons was issued on the same day. Defendants claim they were served on July 15, 1958.

On September 17, 1958, defendants Prevost and Gingher filed unverified answers wherein they denied that the taking was for a public purpose. They also alleged lack of public necessity, abuse of discretion on the part of the board of supervisors, that the taking was for speculative purposes, and that the parcels sought to be taken were zoned by Redwood City for purposes other than public buildings and grounds.

On November 7, 1958, the plaintiff moved to consolidate the cases, also to advance and set them for an early trial date. By stipulation the cases were consolidated as to the issues raised by way of special defenses but not as to the value of the land. Pretrial conference was set for November 24, 1958. The pretrial order, made on November 25, 1958, gave permission to defendants to verify their answers by December 2, 1958; set the trial of the special defenses for December 4, 1958, without a jury; set the jury trial in the Prevost case on the issue of valuation for December 8, 1958; and set the jury trial in the Gingher case on the issue of valuation for January 21, 1959.

Defendants did file a verification to all the allegations in their respective answers, except to those which charged that the board of supervisors were taking the property for specu-

lative purposes and in order to turn it over to other private owners. Defendants moved to vacate the pretrial order on the grounds that the court had abused its discretion in forcing the case to trial upon such short notice. This motion was denied on December 3, 1958. However, at the request of defendants, the consolidated trial of the special defenses was continued to December 15, 1958, and the jury trial on the issue of valuation of the Prevost property was continued to January 5, 1959.

On December 11, 1958, defendants moved for a jury trial on the special defenses, which was denied. On December 15, 1958, plaintiff moved to strike all of the allegations in defendants' answers except those pertaining to the valuation of the property. The court took the motion under submission and continued the trial on the special defenses until December 19, 1958. On December 17, 1958, pursuant to stipulation, the court ordered "[t]hat all allegations except in verification be stricken, otherwise motion denied, subject, however, to objections to evidence thereon at trial."

This was the state of the record when the consolidated trial of the special defenses came before the court for trial on December 19, 1958. Before an opening statement was made or any evidence offered, plaintiff made a motion for judgment on the pleadings. It was granted without giving defendants further opportunity to amend. In connection therewith the judge to whom the trial of the special defenses was assigned, not only made the usual minute order, but also signed a document entitled Judgment on the Pleadings which set forth his finding that the taking was for a public use and that no facts constituting fraud, bad faith or abuse of discretion on the part of the board of supervisors had been pleaded. The trial then adjourned to the dates set for separate jury trials on the issues of valuation and damages.

On December 31, 1958, defendants moved to vacate the Judgment on the Pleadings under Code of Civil Procedure, section 473, and for a further continuance of the dates set for the trials to fix valuations of the property. At the same time defendants presented to the court proposed amended answers and requested leave to file them. All these motions were argued, submitted and denied on January 2, 1959. At the separate jury trials that followed, the jury awarded $33,000 to defendants Prevost on January 5, 1959, and $17,500 to defendants Gingher on April 28, 1959.

Separate appeals were taken by these defendants from the

judgments on the pleadings as to the issues allegedly raised as special defenses; also from the judgments entered thereafter following the jury verdicts.

### ISSUES

Three issues have been raised on appeal which affect both of these cases. All of them are questions of law.

(1) Did respondent's complaint in eminent domain allege facts sufficient to state a cause of action?

(2) Did the answers raise a judiciable issue other than fair market value of the property?

(3) Did the court err in severing the hearing on the special defenses from the trial of the issue of fair market value?

In addition, appellants Prevost question the finding that they caused the trial to be delayed beyond one year from the issuance of summons.

Appellants Gingher claim reversible error was committed in allowing certain questions and answers relating to a parcel of property adjacent to their own.

Hereinafter plaintiff County of San Mateo will be referred to as respondent; where reference is made to defendants Prevost and Gingher jointly, the term appellants will be used.

### DID THE COMPLAINT ALLEGE FACTS SUFFICIENT TO STATE A CAUSE OF ACTION?

Appellants contend that respondent filed the complaints in eminent domain before the resolutions of public interest and necessity became effective, and therefore these actions were brought prematurely. The Charter of the County of San Mateo, article XII, section 2 thereof, provides that all ordinances which may be passed by the board of supervisors shall be subject to referendum whenever the use of the initiative or referendum is permitted by law. (Stats. 1933, ch. 35, p. 2953, at p. 2976.) If the resolutions were subject to referendum, then appellants' position that they were not yet effective when the actions were filed is correct because sections 1770 and 1771 of the Elections Code provide for a 30-day period during which referendum proceedings may be instituted.

Appellants claim that this alleged defect in the proceedings would be subject to general demurrer because the complaint fails to state a cause of action. It is admitted that the point was never raised by demurrer or objection. However, it is urged on appeal under the theory that the question of whether

a complaint states a cause of action can be raised at any stage of the proceedings, so appellants are not estopped to raise it now. (Code Civ. Proc., § 434; *Horacek* v. *Smith,* 33 Cal.2d 186, 191 [199 P.2d 929].)

But this contention on the part of appellants amounts to nothing more than a plea that the actions were prematurely filed. In fact, no referendum petition was filed against either resolution, and both were effective not later than 30 days after their adoption. It follows that the county had a good cause of action, when summons was served and when the cases were tried, because both events occurred more than 30 days after the resolutions were passed. It has long been established in this state that the defense that an action is prematurely brought is a matter of abatement which must be pleaded in proper time or it is waived. Moreover, after this defect has ceased to exist, it cannot be interposed for the first time. Only the more recent cases applying this rule in various situations are cited: *Moore* v. *Fellner,* 50 Cal.2d 330, 343 [325 P.2d 857]; *Radar* v. *Rogers,* 49 Cal.2d 243, 249-250 [317 P.2d 17]; *Kelley* v. *Upshaw,* 39 Cal.2d 179, 186-189 [246 P.2d 23]; *Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 405-406 [154 P.2d 399]; *Seches* v. *Bard,* 215 Cal. 79, 81-82 [8 P.2d 835]; *Verbeck* v. *Clymer,* 202 Cal. 557, 561-562 [261 P. 1017]; *Wurm* v. *Metz,* 162 Cal.App.2d 262, 269-270 [327 P.2d 969]; *Edwards* v. *Container Kraft Carton etc. Co.,* 161 Cal.App.2d 752, 756-758 [327 P.2d 622]; *Green* v. *Sherritt,* 17 Cal.App. 2d 732, 737-738 [62 P.2d 769].

It has also frequently been held that the failure of the complaint to state a cause of action is not fatal to the judgment in the absence of prejudice to the appellant. (Const., art. VI, § 4½.) See for example, *Steffen* v. *Refrigeration Discount Corp.,* 91 Cal.App.2d 494, 500 [205 P.2d 727]; *Ades* v. *Brush,* 66 Cal.App.2d 436, 443-444 [152 P.2d 519]. It is difficult to see where appellants have been prejudiced by the fact, if it be a fact, that the complaints in these cases were prematurely filed.

## WAS A JUDICIABLE ISSUE RAISED BY THE PLEADINGS?

Appellants point out that the question of whether or not land condemned under right of eminent domain is, in fact, taken for a "public use" is a judiciable issue. They admit that since *People* ex rel. *Department of Public Works* v. *Chevalier,* 52 Cal.2d 299 [340 P.2d 598], the questions of public interest and necessity are exclusively within the discretion of the condemning body; but as stated therein (p.

304) : "The only limitations placed upon the exercise of the right of eminent domain by the California Constitution (art. I, § 14) and the United States Constitution, (Fourteenth Amendment) are that the taking be for a 'public use' and that 'just compensation' be paid for such taking. Each of these limitations creates a justiciable issue in eminent domain proceedings." It is therefore necessary to determine whether or not the pleadings raised this issue.

At the time of the granting of judgment on the pleadings, the state of the record showed that paragraph IV of the complaints alleged the unanimous adoption of resolutions of public interest and necessity to condemn the land involved for public buildings and grounds. The resolutions are pleaded *in haec verba*. All of the allegations in said paragraph are admitted by the answers. Paragraph V alleges that, "Each of the said parcels sought to be taken in this action includes the whole of entire parcels, tracts, or pieces of property; that all of said land described in paragraph IV above is necessary for the use of plaintiff for County purposes and it is necessary that a fee simple title be taken by plaintiff in said land for said County purposes." As to this paragraph, appellants' answers deny that the parcels are necessary for county use; deny that said parcels are taken for any public purpose; deny that said parcels are necessary for any county purpose; deny that any necessity exists to take fee simple in said property or interest to any lesser degree for any county purpose. Appellants then allege that, "said land is zoned by the planning commission of Redwood City for commercial use and not for public lands and buildings, and that said County has the opinion that said land will increase rapidly in value, and that this suit was filed to enable the County to secure the land before it has increased in value beyond the value fixed on the filing of this complaint; that the County has no present or foreseeable need for said land and said County resolved to take said land without any present or future plans for the use of said land and without any need for said land; that by reason of the facts alleged the plaintiff and its Board of Supervisors has abused its discretion and acted arbitrarily, capriciously and in fraud of the defendants' rights in adopting said Resolution . . . ."

It is to be noted that the affirmative allegations of the answer go to the question of public interest and necessity. *People* v. *Chevalier, supra,* holds that these are not judiciable questions. On analysis the pleadings boil down to allegations

432

that the taking is for "County purposes, to wit: For public buildings and grounds," and appellants' denial thereof.

*People* v. *Nahabedian,* 171 Cal.App.2d 302 [340 P.2d 1053], is cited in support of appellants' contention that mere denial of plaintiffs' allegation of "public use" raises that issue. An analysis of that case indicates that it does not necessarily support that proposition. True, the judgment was reversed because the trial court refused to admit evidence that the land sought to be condemned was to be used for private purposes and the pleadings merely denied the taking was for a "public use." The answer, filed in propria persona, alleges that the taking was not for freeway purposes, ". . . but in truth and fact said property is sought for other purposes." As noted by the court (p. 306), these pleadings were deficient because it was not alleged what the "other purposes" were. The record showed that defendant was seeking to prove that the real purpose for the condemnation was not for highway purposes as alleged by plaintiff, but in order that the property could be leased to an individual to be operated as a private auto park. No demurrer or motion to strike had been directed at the answer and the case was tried on the theory that "public use" was an issue. Therefore, on appeal the parties were estopped to claim that the issue was not before the court and the trial court should have admitted evidence on this issue as it did evidence offered on the other issues. In the case at bar respondent attacked the sufficiency of the answers to raise the issue of "public use" both by motion to strike and also by motion for judgment on the pleadings.

The complaints in question set forth the resolutions of public interest and necessity *in haec verba.* They expressly state that the taking is for a public purpose (which purpose is authorized by Code Civ. Proc., § 1238, subd. 3, and by Gov. Code, § 25353), and these allegations are admitted in the answers. Such a resolution is prima facie evidence that the taking is in fact for a public purpose. The actions of public bodies, acting within the powers vested in them, are presumed to be proper. (Code Civ. Proc., § 1963, subd. 15; *Lavine* v. *Jessup,* 161 Cal.App.2d 59, 67 [326 P.2d 238].)

The adoption of the resolution and its determination that the taking is for a public purpose being admitted, the burden shifts to the appellants to show facts indicating that the taking is in fact not for a public purpose, and they must affirmatively plead such facts; otherwise, their admission of the adoption of the resolution is equivalent to an admission

that the taking is for the public purpose stated in the resolution.

 Facts constituting abuse of discretion, fraud on the landowners' rights, or arbitrary action, must be specifically alleged to attack the resolution of public interest and necessity. (*People* v. *Lagiss,* 160 Cal.App.2d 28, 33 [324 P.2d 926]; *People* ex rel. *Department of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925, 941 [268 P.2d 117]; *People* v. *Thomas,* 108 Cal.App.2d 832, 836 [239 P.2d 914].) Similar allegations should be pleaded where property owners seek to raise the issue of "public use" in a case where the condemning body has specified the use as one which has been declared proper for eminent domain proceedings by the state. It is also true that the courts will not interfere unless the facts pleaded show that the use is clearly and manifestly of a private character. (*Stratford Irrigation District* v. *Empire Water Co.,* 44 Cal.App.2d 61, 67 [111 P.2d 957].)

*People* v. *Chevalier, supra,* recognizes this principle. In that case the answer alleged fraud, abuse of discretion and bad faith as to the motive for condemning, the necessity to condemn and the selection of the land sought to be condemned. But none of the allegations alleged taking for a private purpose or affirmatively impugned the taking for a public purpose. The court stated (p. 304) : "There is no question, then, that the takings in the instant case are for a public use. Defendants did not allege fraud, bad faith, or abuse of discretion in the sense that the condemner does not actually intend to use the property as it resolved to use it." It cites with approval (p. 306) the case of *People* v. *Olsen,* 109 Cal. App. 523, 531 [293 P. 645], which states: "The question as to whether the land was to be devoted to a public use as distinguished from a mere private service may, under adequate pleadings, become a proper issue for the judicial determination of the court. . . . To raise this issue it is necessary to specifically charge fraud, bad faith or an abuse of discretion. . . ."

It is to be further noted that in the original unverified answers of the appellants, they alleged, "that said land is being acquired for speculative purposes" and "in order that the County may make a profit from the subsequent sale of the land, thus speculating in the purchase and sale of the said land at the expense of the taxpayers" and "that the taking is intended to deprive the present private owners of the use of the land in order to turn the land over to other

private owners.'' At the pretrial conference appellants sought and were permitted to verify their answers. When they did so they expressly desisted from verifying the allegations hereabove noted. Thereupon the court, on motion of respondent, struck from the answers these unverified allegations. After the motion for judgment on the pleadings was granted, appellants sought to vacate that judgment and ask leave to file amended answers seeking to cure the deficiencies in their pleadings. The proposed amended answers did not seek to restore the allegations of speculative purposes or private use, nor to add any affirmative allegations that would properly frame an issue of ''public use.''

We must assume that appellants in their pleadings, filed or proposed for filing, were stating their case as strongly as possible. They cannot say upon this appeal that the court gave them no opportunity to amend after respondent made its motion for judgment on the pleadings. Appellants' motion to vacate that judgment was heard and denied. At that time appellants asked leave to file amended answers which were attached to their notice of motion. ■ The proposed amended answers were found to be insufficient to raise the issue of ''public use.'' They still amounted to a mere denial of plaintiff's allegation that the taking was for a public purpose. We therefore conclude that appellants could not plead facts sufficient to attack the county's allegation in this respect.

■ The contention of appellants that the pretrial order made ''public use'' an issue whether it was framed by the pleadings or not, is without merit. The pretrial order specified that one of the issues was whether respondent had validly and properly instituted the proceedings. This may include the question of ''public use.'' But, it also provided that another question to be resolved was whether appellants could ''attack the validity of the proceedings.'' The ruling against appellants on the latter issue, because of the insufficiency of the pleadings, rendered the first issue moot, and it was consistent with the pretrial order.

■ Neither is there merit in the contention that the county cannot take for a use in conflict with existing zoning ordinances of the municipality where the land is situated. The board of supervisors can override decisions of the municipality with respect to the zoning of county owned property. (Gov. Code, § 65554; *Town of Atherton* v. *Superior Court,* 159 Cal.App.2d 417, 423, 428 [324 P.2d 328].)

### Did the Court Err In Separately Trying the Special Defenses?

Because the special defenses came on for trial on December 19, 1958, appellants claim that the resulting judgment on the pleadings was "on the merits." It did embody a finding in favor of respondent that the taking was for a "public use." Code of Civil Procedure, section 597, provides that where the answer pleads a ". . . defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, the court may, upon motion of either party, proceed to the trial of such special defense or defenses before the trial of any other issue in the case, . . ."

Appellants did not object to the order consolidating the several cases for joint trial as to the special defenses. They objected to the early date set for trial and they objected to consolidation for trial on the issue of valuation. But they withdrew their objections, except as to trial dates, when the court indicated that the consolidation would only affect the trial of the special defenses. The record reveals no objection to one judge hearing the issue of valuation after another judge had heard and disposed of the special defenses, until the point was raised on appeal in appellants' brief.

But did the hearing on the special defenses constitute a trial on the merits? When the case was called for trial no opening statement was made; no witnesses were sworn; no evidence was offered. Neither party made an offer of proof. A purely legal issue had been framed by the pretrial order, namely: Could the appellants "attack the validity of the proceedings" to condemn this property? The court had to dispose of that question on the issues, if any, raised by the pleadings. Respondent chose to present this issue to the court by making a motion for judgment on the pleadings. If no judiciable issue was pleaded, no further trial of the special defenses was required. The function of a motion for judgment on the pleadings is the same as that of a general demurrer. It is axiomatic that issues raised by a general demurrer are legal and not factual. (Code Civ. Proc., § 589.) The fact that said motion was made and granted at the time set for the commencement of the trial on the merits does not change the nature of action taken by the court.

 The entry of judgment on the pleadings here was interlocutory in its express terms and it gave no affirmative relief. It served the purpose of a detailed minute order

for the convenience of the judges who presided over the subsequent valuation trials. It follows the procedure for handling special defenses approved in *Crofoot* v. *Crofoot,* 132 Cal.App. 2d 794, 798 [283 P.2d 283]. If the procedure more properly should have been to merely make a minute order as to the court's disposition of the special defenses, rather than a signed judgment in connection therewith, that constitutes an irregularity which is not jurisdictional so as to render the legal determination void. (*Williams* v. *Superior Court,* 14 Cal. 2d 656, 663 [96 P.2d 334].)

The procedure here in hearing the legal issues separately from the issues of fact is consistent with accepted judicial practice in this state. In most of the multijudge counties, one judge is assigned to hear law and motion matters and thereafter the case is assigned to another judge for trial of the factual issues and for final disposition of the case. In such situations one judge hears and decides some of the legal issues in a case and another judge hears and decides the remaining issues, legal and factual. The several judges, whether sitting separately or together, make up the same court. (*Steinberg* v. *Goldstein,* 129 Cal.App.2d 682, 687 [278 P.2d 22].) There is no merit in appellants' contention that both judgments are entirely void because one judge signed the judgments resolving the special defenses and another judge conducted the jury trial as to valuation and signed the interlocutory and final judgments that followed. (*City of San Diego* v. *Superior Court,* 36 Cal.2d 483, 486 [224 P.2d 685]; *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299, 325 [283 P. 298].)

DOES THE EVIDENCE SUPPORT THE FINDING THAT DELAY OF TRIAL BEYOND ONE YEAR WAS CAUSED BY APPELLANTS?

Appellants Prevost claim reversible error was committed during the trial on the issue of valuation of the property, when the court instructed the jury to find the market value thereof as of December 10, 1957, the date upon which summons was issued. Code of Civil Procedure, section 1249, provides that: ''For the purpose of assessing compensation and damages the right thereof shall be deemed to have accrued at the date of the issuance of summons . . . provided, that in any case in which the issue is not tried within one year after the date of the commencement of the action, unless the delay is caused by the defendant, the compensation and damages shall be deemed to have accrued at the date of the trial.'' The

court found "[t]hat the trial of the issue of compensation and damages herein was not commenced within one year after the commencement of this action, and the delay in the commencement thereof beyond the said one year period was caused by the defendants." Therefore, if this finding is supported by substantial evidence there would be no error in giving the instruction complained of.

Although the Prevost suit was filed on December 10, 1957, appellants claimed they were not served until July 15, 1958. They did not file their answer until September 17, 1958. No memorandum to set the case for trial was filed, but on November 7, 1958, respondent moved to advance the case for trial and consolidate it with the Gingher case. Since such actions for eminent domain are entitled to preference on the calendar and early trial (Code Civ. Proc., § 1264), it was set for pretrial on November 24, 1958. At pretrial the court set December 4, 1958, for the trial of the special defenses and December 8, 1958, for the trial as to value of the property. Both of these trial dates were within the period of one year from the date summons was issued. On December 3, 1958, on motion of and at the express request of appellants, these trial dates were continued to December 15, 1958, and January 5, 1959, respectively. These dates are beyond the one-year period. The face of the record therefore supports the finding.

However, appellants believe that the word "cause" should be considered in the sense of "being at fault." They point out that respondent took no steps to bring these cases to trial until November 7, 1958, which was only 33 days before the one-year period expired; that it was unreasonable to expect appellants to adequately prepare and present their case upon such short notice; that it was an abuse of discretion for the court to set the trials on the special defenses and as to valuation so closely following pretrial and so closely following each other; that appellants' requests thereafter for continuances were not to delay the trial, but to enable reasonable preparation for it, after respondent's tardy application for an early trial; that the situation thus having arisen through the fault of respondent, the court could not find appellants caused the delay.

Appellants cite *City of San Rafael* v. *Wood,* 144 Cal.App. 2d 604, 606 [301 P.2d 421], for the proposition that when a case of eminent domain is brought to trial after expiration of one year from its filing, through no fault of the defendants, the valuation date is the date of trial. In that case the trial

was held over three years after suit was filed and the condemning body had taken possession at the commencement of the action. The question before the court was whether or not the date of taking possession or the date of trial fixed the valuation date. The condemning body made no claim that valuation date should be the date of issuing summons. The sole issue was how to properly reimburse the defendant who had been deprived of the use of his property for the period between the date of taking possession and the date of trial. This does not apply to appellants' situation, where the record shows the continuances granted beyond the year were upon their own motion. The record discloses substantial evidence supporting the court's finding and therefore it should not be disturbed on appeal. (*Ballard* v. *Augustine*, 171 Cal.App.2d 206, 226 [339 P.2d 859]; *Realty Co. of America, Inc.* v. *Burton*, 160 Cal.App.2d 178, 190 [325 P.2d 171]; *Bedford* v. *Pacific Structural Welding Corp.*, 121 Cal.App. 162, 163 [8 P.2d 558].)

### DID THE COURT COMMIT REVERSIBLE ERROR IN ADMITTING EVIDENCE CONCERNING VALUE OF ADJACENT PROPERTY?

The issue of valuation of the parcel owned by appellants William J. Gingher and Bernice M. Gingher was tried by a jury on April 22, 1959. Frank J. Rochex, Jr., one of respondent's appraisers, was permitted to testify, over objection, that the sale of the adjoining property to the county was an open market transaction because, ". . . the deal was already made out practically at the time when the filing of the condemnation was made." Later, during the direct examination of this same witness, the fact was elicited that this adjacent property had been listed for sale on the open market for some time. The witness was then asked, "And at what price per square foot was that listing?" Over objection he was permitted to answer: "The asking price was $12,500.00 or $1.62 a square foot. . . . And it was on the market for about a year and a half before——." This adjoining property had, in fact, been sold to the county on May 7, 1958, nearly a year before the trial in question. Originally it had been one of the parcels described in this same law suit which commenced on February 6, 1958.

Appellants claim error both in letting the witness express his opinion that the sale referred to was an open market sale rather than one forced upon the property owner by threats of condemnation, and permitting him to express

his conclusion that the sale was "made out" when the condemnation started. Even if these conclusions of the witness might be stricken, the fact remains that the subject matter of the questions was proper under the circumstances. Therefore the failure to strike would not be reversible error.

It is true that evidence of price paid by a public corporation with power of eminent domain is usually not a proper basis for determination of market value. (*County of Los Angeles* v. *Faus*, 48 Cal.2d 672 [312 P.2d 680].) But, the same case points out that such evidence is not always inadmissible, especially where the sale preceded the filing of an action in eminent domain against the same or adjacent property. The price paid by respondent for this adjoining parcel would be admissible if the price paid was sufficiently voluntary to be a reasonable indication of value. (*People* ex rel. *Department of Public Works* v. *Murata*, 161 Cal.App.2d 369 [326 P.2d 947]; *Covina Union High School District of Los Angeles County* v. *Jobe*, 174 Cal.App.2d 340 [345 P.2d 78].)

The purpose for the testimony objected to was to ascertain whether the sale was free from the pressures of condemnation and whether it actually represented the fair market value of the property. Such preliminary questions were necessary to permit the judge to make his ruling on that question. "Under the new rules enunciated in *Faus* 'evidence of the prices paid for similar property in the vicinity, including prices paid by condemner' is held admissible as evidence of value. However, we interpret the *Faus* decision as holding also that a 'wide discretion' must be granted the trial judge in determining the admissibility of evidence of other sales; that the laying of appropriate foundations should be required to keep the admission of such evidence 'within safeguarding limits' and that evidence of the price paid by a condemner should be admitted as evidence of value only after the trial judge has been satisfied 'that the price paid was sufficiently voluntary to be a reasonable index of value.' " (*People* ex rel. *Department of Public Works* v. *Murata, supra,* at p. 375.)

Appellants also claim error in permitting the witness to be asked what the listing price was for this adjoining property, since the true measure of value, if it was an open market sale, was the actual sale price. The price paid for similar property in the vicinity is admissible on direct examination and cross-examination of a witness who is presenting testimony on the issue of value of property subject to con-

demnation. (*County of Los Angeles* v. *Faus, supra,* at p. 676.)

But there are circumstances when listing price of property may be admissible. Where the court is trying to determine whether or not a sale to the county represents the fair market value of the property, the fact that it was listed in the open market for the same price as the county paid is, in itself, evidence that the sale was not made at a price depressed by threat of condemnation. That is exactly the question which the trial court was faced with when this evidence was offered and admitted.

Evidence concerning listing price might also be admissible on rebuttal if other witnesses indicated that the adjoining property was worth more than $1.62 per square foot. Whether or not this evidence became admissible for impeachment purposes cannot be determined from the record before us. The agreed statement is devoid of other evidence as to so-called similar sales. It does reveal that appellants' appraisers claimed a much higher value for the property being condemned. It would be logical to confront such witnesses with the value of the adjoining parcel. If they were unfamiliar with the fact that the adjoining parcel had been on the market with no takers for a year and a half at a much lower per square foot price than they were claiming for the subject property, it would certainly have impeaching value. It being possible that it could have been admissible for this purpose, the presumption in favor of the judgment requires that this court give every intendment in favor of the ruling of the trial court. The ruling should not be considered error if there is any basis on which the evidence might have been admissible. (*Owen* v. *Morton,* 24 Cal. 373.)

The appeals from the judgments on the pleadings should be dismissed since they were preliminary findings as to the special defenses and were embodied in the interlocutory and final judgments which are here reviewed.

Appeals from judgments on the pleadings dismissed.

Judgments affirmed.

Tobriner, Acting P. J., and Duniway, J., concurred.

Petitions for a rehearing were denied October 5, 1960, and appellants' petition for a hearing by the Supreme Court was denied October 26, 1960.