[L. A. No. 11652. In Bank.—May 29, 1930.]

ALEXANDER C. GRAY et al., Appellants, v. THE CITY OF LOS ANGELES et al., Respondents.

Robert Young for Appellants.

Erwin P. Werner, City Attorney, Frederick Von Schrader, Assistant City Attorney, and Sam H. Erwin, Deputy City Attorney, for Respondents.

PRESTON, J.—The judgment is affirmed.

It is difficult to find in this record matters of sufficient importance to warrant discussion. The suit is brought by a number of property owners against the City of Los Angeles and certain of its officers to enjoin the collection of an assessment levied in a street proceeding. The attack is general and desultory. The council of the city is carrying out a comprehensive improvement known as the Hollywood Five-Finger Plan under the Street Opening Act of 1903, supplemented by the Street Opening Act of 1911 (Deering's Gen. Laws, Acts 8198, 8199, p. 3309 et seq.), which involves the widening of Cahuenga Avenue, between Highland Avenue and Hollywood Boulevard and from Hollywood Boulevard southward the opening and widening of several streets, all having for its object the accommodation of traffic along said first-mentioned avenue from the San Fernando Valley to the business centers of Hollywood and Los Angeles.

No complaint is made of the proceedings on their face, which are in substance as follows: An ordinance of intention containing a description of the improvement, the boundaries of the assessment district and all the other elements required by law was passed by unanimous vote of the city council on November 6, 1925, approved by the mayor and published as required by law with the insertion therein of a declaration that the city itself would pay $148,708 toward said improvement. Thirty days were allowed for the filing of written protests against said improvement and said district, and the owners of some 3.7 per cent of the property fronting on said streets sought to be improved and within the assessment district filed

protests, which were heard and denied on January 27, 1926. Thereafter and on February 17th, Ordinance No. 54065 was passed ordering the said work and directing the city attorney to bring an action in the Superior Court for the condemnation of the real property described in the ordinance of intention and required for the construction of the contemplated improvement.

Thereafter and on August 6, 1926, an action was filed for the condemnation of said lands. Thereafter an interlocutory judgment was entered awarding the owners of the lands to be taken $4,044,961.05, in addition to which there were incurred expenses of condemnation amounting to $117,179.20, making a total sum of $4,162,140.25. Deducting from this sum said above mentioned sum of $148,708, left the sum of $4,013,432.25 to be assessed upon said property within the said district described in said ordinance.

None of the plaintiffs whose appeals are before us protested in any manner against the said improvement or against the said district. Following said interlocutory judgment of condemnation the board of public works of said city caused to be prepared and filed with the city clerk an assessment of the property in said district sufficient to pay said sum. Certain of these plaintiffs only thereupon filed objections to the confirmation of this assessment, which said objections were thereafter heard by the city council and denied, following which the assessment was by the council regularly confirmed. After said confirmation the assessment was delivered to the board of public works and was by it recorded on February 27, 1929, in a book kept for that purpose, together with a diagram and certificate appended thereto.

The parties now before us, after their assessment had become delinquent, to wit, on April 16, 1929, filed the present action, praying that said ordinance of intention and the assessment levied upon their property be declared void and that the purported lien of said assessment be removed as a cloud upon the title to their respective properties and that an injunction issue restraining the sale of the property covered thereby and asking other specific relief.

Regular answer was made by the city to this complaint and certain special defenses were interposed. The cause went to trial on April 25, 1929. After a patient hearing,

the court made findings and gave its judgment in favor of defendants, denying all relief to plaintiffs. Thereafter and on June 3, 1929, plaintiffs gave notice of appeal. On June 28, 1929, the transcript was lodged with this court. Appellants' reply brief was filed February 11, 1930. We have advanced the cause for hearing because of the public interest in the contemplated improvement.

It is to be noted at the outset that plaintiffs are in a prejudiced position because of the fact that they neither protested the making of the improvement nor the boundaries of the district fixed upon which the assessments were to be levied. Indeed, plaintiffs are now making no specific objections as to the improvement, the district or the assessment. Their objections, as above noted, are purely general and in our opinion entirely without merit.

The first contention is that the city council was unduly influenced by a petition filed with it prior to the passage of the ordinance of intention signed by some eighteen citizens who owned property in the proposed district and who were members of the Hollywood Chamber of Commerce. We know of no reason why a city council prior to taking action on legislative questions may not receive petitions and remonstrances from some or all citizens to be affected thereby. It is not only within its province, but well-nigh its duty to do so.

But it is contended that the members of said council transferred their functions as legislators to the said eighteen members of the Chamber of Commerce of Hollywood in that they allowed said citizens to tender a bond in the sum of $3,000 conditioned to the effect that if the street improvement was "protested out" the incidental expenses necessary to get the proceedings started would be paid by the said surety. In view of the fact that under section 4 of the act a protest by the owners of a majority of the frontage might effectually prevent a consummation of the improvement, it was well within the discretion of the council to require indemnity against the incidental outlay necessary to set such a proceeding on foot in that it requires maps, surveys and other data. This was not an illegal but a commendable act. Thereafter, when the proceeding had passed this protest stage, the indemnity undertaking was canceled.

▊ The next objection made is that the board of public works did not in fact make the assessment. The court, however, on a proper showing in the record found that the "board of public works directed its corps of experts to prepare the details of the assessment map and rolls; that the director of the bureau of assessments with his assistants worked out the details of the assessment according to a definite theory of benefits; that before putting the map and assessment-roll into final shape he took up the matter with the members of the board of public works at an informal meeting which lasted about an hour, at which meeting he outlined the general scheme and theory upon which the assessment was based and the manner in which it had been carried out. The members of the board having in a general way expressed themselves as satisfied with the scheme, the map and the assessment-roll were completed and about a month or so thereafter the assessment was formally and officially adopted by said board of public works." In the face of a finding of this kind, it is useless to contend that the assessment was not regular in form.

In closing this discussion it may be said that the court below granted to plaintiffs' counsel the utmost latitude in the presentation of his cause. He allowed certain signers of the petition to be examined as witnesses, certain members of the city council, certain members of the board of public works, the city engineer and various clerks and others, upon matters relating to the internal workings of the various departments and having to do with the initiation and consummation of these street proceedings. The examination extended even to their knowledge of the project and the motives actuating their official action. An examination of the evidence shows nothing of a substantial character whatsoever upon which to base a claim that the proceedings were anything other than absolutely regular. There is absolutely no showing whatsoever of a fraudulent purpose or arbitrary conduct or oppression that would cause fraud to be presumed.

The whole proceeding to our mind is singularly free from objectionable criticism of any kind whatsoever. The fact that the scheme was part of a comprehensive plan to improve traffic conditions in the city and that it was indorsed by the city and also the county planning commissions and

by numerous civic bodies and that it was protested by only a few of the property owners argues loudly for the soundness of the conclusion of the trial court that the proceeding was regular, free from fraud or oppression and conducted in good faith.

In fact, the complaint on its face shows no equity and the court below would have been sustained in refusing to admit most of the evidence offered. The record discloses no facts upon which a judicial question of any kind has arisen; hence we have reached the conclusion first herein announced.

Curtis, J., Shenk, J., Richards, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.