[Civ. No. 38352. Second Dist., Div. Four. Dec. 23, 1971.]

KAY COUGHLIN BREINER et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Phill Silver for Plaintiffs and Appellants.

Roger Arnebergh, City Attorney, Milton N. Sherman, Assistant City Attorney, James L. Spitser and Ronald J. Einboden, Deputy City Attorneys, for Defendants and Respondents.

OPINION

DUNN, J.—Nineteen plaintiffs filed a first amended complaint against a number of defendants, two of whom, the City of Los Angeles and the Board of Airport Commissioners of the City of Los Angeles, filed a general and special demurrer. The trial court sustained the general demurrer with-

out leave to amend, its minute order noting plaintiffs' statement that the complaint could not be further amended and plaintiffs' request that, if sustained, the demurrer be sustained without leave to amend. Thereafter, the demurring defendants were ordered dismissed from the action. Plaintiffs appeal from the judgment of dismissal. (Code Civ. Proc., § § 581d, 904.1, subd. (a).)

Plaintiffs' first amended complaint contained four alleged causes of action and sought declaratory and injunctive relief. The first cause of action alleged that the commissioners passed a resolution and the city thereafter adopted ordinance No. 140568, each providing, in essence, that "public interest, convenience and necessity" required the acquisition of properties. owned by the plaintiffs, among others, "for the extension and enlargement of the Los Angeles International Airport." The ordinance additionally authorized the city attorney to institute condemnation proceedings. Plaintiffs allege there is a controversy in that, they contend, their properties are not to be taken for "physical occupation" and are being taken by defendants "for the sole purpose of evading any liability for the payment of inverse condemnation claims." They further allege "excessive" land may not be taken by condemnation and that they are entitled to an adjudication as to whether the lands are being taken for a "public use" and that defendants should be enjoined from taking any action under the ordinance until that issue is decided.

The second cause of action incorporates most of the first, adding that, prior to passing its resolution, the airport commissioners authorized an "election" to be held among the owners of property within the pertinent area to ascertain the "opinions" of such owners "as to whether all of the property situated [there] . . . shall be taken by eminent domain." Plaintiffs alleged that the ascertainment of a consensus "by the City Council" was an attempt unlawfully to delegate legislative and judicial powers and was unfair and discriminatory; plaintiffs claimed entitlement to declaratory relief because "the right of these plaintiffs to receive a determination from the condemning authority has been prejudiced."

Their third cause of action incorporates most of the clauses of the first cause of action and further alleges that Assembly Bill No. 2266, called the "Beverly Bill," was adopted by the state Legislature before the city ordinance was adopted and that many property owners who voted in favor of condemning the subject land relied on the Beverly Bill, believing it to be constitutional and lawful, but that the Beverly Bill is unconstitutional and unlawful, for which reason the "election" (mentioned in the second cause of action) was unlawful.

The fourth cause of action incorporates the same allegations from the first cause of action and alleges that section .1239.2 of the Code of Civil Procedure provides for the acquisition of airspace only if such is necessary to protect airport approaches "from the encroachment of structures or vegetable life of such height or character as to interfere with or be hazardous to the use of such airport"; that section 1239.4 specifies that, in such acquisition, the former land owner shall have reserved a free license to use and occupy the land for all purposes except erection or maintenance of the hazards specified. Plaintiffs allege a right to declaratory relief, in that their properties do not fit within the statutes for which reason condemnation of them would be unlawful. They seek a declaration to that effect, together with an order enjoining defendants from taking any action.

The ordinance mentioned in the first cause of action, of which we take judicial notice[1] (Evid. Code, § 459; Code Civ. Proc., §§ 430, 431.5), states: "Sec. 1. The Council of the City of Los Angeles, finds and determines that the public interest, convenience and necessity require the acquisition, in fee simple, for airport purposes, for the expansion and enlargement of Los Angeles International Airport, of certain real properties . . . Sec. 2. . . . more particularly described as follows . . . ." Thereafter described are 373 parcels of real property among which are the properties of plaintiffs. Section 3 authorizes and directs the city attorney to bring an action to condemn them.

By their first cause of action, plaintiffs asked the trial court to go behind the ordinance and determine that the city council's motive in taking their lands was to evade whatever damages might be imposed through the institution, by plaintiffs, of inverse condemnation actions. This the court was not authorized to do. Whether public necessity requires acquisition of property is strictly a legislative, not a judicial, question and legislative "motive" is not a subject of inquiry under such circumstance.

The trial court's minute order, complying with the requirements of Code of Civil Procedure section 472d, stated this rule in listing the grounds upon which the demurrer was sustained, quoting from *People* v. *Chevalier* (1959) 52 Cal.2d 299, 304-305 [340 P.2d 598]. *Chevalier* was a condemnation action. Allegations in defendants' answer to the complaint, purporting to raise affirmative defenses, had been stricken on plaintiff's motion. These allegations had attacked a finding by the city council that condemnation of defendants' land was in the public interest; fraud, bad faith and abuse of discretion with respect to this finding were alleged. In sustaining

---

[1]A certified copy of the ordinance was attached to defendants' demurrer, for the trial court's notice.

the trial court's ruling our Supreme Court stated (pp. 304-305): "The stricken allegations in defendants' 'special defenses' sought judicial review of the findings that the respective takings were necessary and commensurate with the greatest public good and the least private injury. These legislative determinations are frequently termed the question of necessity. [Par.] The recitations in the city ordinance and Highway Commission's resolution of the 'public necessity' of the proposed improvements, that 'such property is necessary therefor,' and that the improvements were 'planned or located in the manner which will be most compatible with the greatest public good, and the least private injury,' are 'conclusive evidence' of those matters . . . . In upholding the constitutionality of this conclusive presumption, the United States Supreme Court said: 'That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. . . . The question is purely political, does not require a hearing, and is not the subject of judicial inquiry.' (*Rindge Co.* v. *County of Los Angeles, supra,* 262 U.S. 700, 709 [67 L.Ed. 1186, 1193, 43 S.Ct. 689].)" Our Supreme Court further stated (p. 307): "We are therefore in accord with the view that where the owner of land sought to be condemned for an established public use is accorded his constitutional right to just compensation for the taking, the condemning body's 'motives or reasons for declaring that it is necessary to take the land are no concern of his.' " (And see: *City of Los Angeles* v. *Keck* (1971) 14 Cal.App.3d 920, 924-925 [92 Cal.Rptr. 599]; *Miro* v. *Superior Court* (1970) 5 Cal. App.3d 87, 95 [84 Cal.Rptr. 874]; *State of Cal.* ex rel. *Dept. of Water Resources* v. *Natomas Co.* (1966) 239 Cal.App.2d 547, 556-557 [49 Cal. Rptr. 64].)

California Code of Civil Procedure section 1241 states a like rule, declaring, in part: "Before property can be taken, it must appear: . . . 2. That the taking is necessary to such use; provided, when . . . the legislative body of a . . . city . . . shall, by resolution or ordinance . . . have found and determined that the public interest and necessity require the acquisition . . . of . . . the property described in such resolution or ordinance . . . such resolution or ordinance shall be conclusive evidence; (a) of the public necessity of such proposed . . . public improvement; (b) that such property is necessary therefor, and (c) that such proposed . . . public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury . . . ."

█ As earlier noted, appellants' first amended complaint alleged that a controversy existed in that they contend, and respondents allegedly dispute, that "excessive land may not be lawfully taken in condemnation . . . for a pretended purpose that such land is required to serve a public

use." Such claim of the existence of a controversy is laid to rest in *People ex rel. Dept. Pub. Wks.* v. *Lagiss* (1963) 223 Cal.App.2d 23 [35 Cal.Rptr. 554] wherein the court states (pp. 38-39): ". . . most of defendant's evidence was directed towards the proof that plaintiff was seeking to acquire land in *excess* of that necessary for the designated purpose. It appears, therefore, that to a considerable degree the trial court and respective counsel confused 'necessity' with 'public use.' The character of the use, and not its extent, determines the question of public use. . . . It is necessary, therefore, to distinguish between the amount of land and the necessity for its condemnation, as contrasted with the proposed purpose for which it is to be used. The necessity for the construction of a highway . . . together with the amount of land required therefor, are matters which were conclusively established by the adoption of the resolution."

Code of Civil Procedure section 1060 allows a person to seek a declaration of his rights when "an actual controversy" exists but the controversy must be of a type wherein the court can act; there must be a "justiciable controversy." ■ As stated in *Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 260 [13 Cal.Rptr. 491]: " '. . . not only must the controversy be a justiciable controversy, as distinguished from "a difference or dispute of a hypothetical or abstract character; from one that is academic or moot," but it must be "definite and concrete, touching the legal relations of the parties having adverse legal interests." . . . In short, the controversy must be of a character which admits of specific and conclusive relief by judgment within the field of judicial determination, as distinguished from an advisory opinion upon a particular or hypothetical state of facts.' "

■ Appellants erroneously contend a "justiciable" controversy is alleged. In *Chevalier, supra,* the first decision of *People* v. *Lagiss* (1958) 160 Cal.App.2d 28 [324 P.2d 926] was overruled, in effect, if not specifically. Thus, as noted in the second appellate decision of *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss, supra,* 223 Cal.App.2d at page 31: ". . . the Supreme Court in *People* v. *Chevalier* . . . held that the question of 'necessity' is not justiciable and disapproved any language in *People* v. *Lagiss* [first decision] and other cases implying a contrary rule."

Appellants rely upon *People* ex rel. *Dept. Pub. Wks.* v. *Superior Court* (1968) 68 Cal.2d 206 [65 Cal.Rptr. 342, 436 P.2d 342]. That case is readily distinguishable, the court there noting that defendants contended that the taking was not for a "public use." "Public use" and "public necessity" are different things and are to be distinguished and treated differently. (*People* v. *Chevalier, supra,* at pp. 305-307.) Nowhere do plaintiffs allege that the lands involved will not be taken for a public use, namely, for airport purposes. Their sole claim, although using the term "public use," is

that the necessity is not that "public necessity" declared, but represents a different necessity or purpose, namely, to evade damages in possible condemnation actions to be filed by plaintiffs. Plaintiffs' terminology, by misnaming the nature of their claim, does not enable them to escape the rule that a "justiciable" controversy must exist. No such controversy is alleged in the first purported cause of action.

What has been said of plaintiffs' first cause of action is equally applicable to the second, third and fourth causes of action, so far as they incorporate allegations from the first.

■ The second professed cause of action goes on to allege an illegal "election" to ascertain opinion. Nowhere does it allege that the city council, let alone the commissioners who ordered the election, rested their determination to condemn on the outcome of such canvass of opinion. Indeed, the complaint only alleges ". . . the Board of Airport Commissioners adopted a resolution authorizing an election to take place by the owners of the property . . . for the purpose of determining the opinions of said property owners . . . ." In a like vague and desultory manner, it further alleges "The decision by the City Council to ascertain in [*sic*] consensus of opinion of the land owners . . . for the purpose of assisting the City Council in arriving at a formal determination . . . was an attempt to unlawfully delegate legislative and judicial powers. . . ."

First, there is no explanation pleaded showing how the action of the commissioners is to be attributed to the city council.

Second, assuming that a solicitation of opinions in such manner constitutes an "election" (a matter we do not decide), there is no allegation that the determination to condemn hinged upon any consensus, or that such consensus was binding on the council. While a city's legislative power may not be delegated, no such abdication of power is alleged. It would be unrealistic to require that a legislator be insulated from the opinions of the affected populace. As stated in *Gray* v. *City of Los Angeles* (1930) 209 Cal. 502, 505 [288 P. 673]: "We know of no reason why a city council prior to taking action on legislative questions may not receive petitions and remonstrances from some or all citizens to be affected thereby."

The third purported cause of action speaks of Assembly Bill number 2266, the "Beverly Bill." The fact, if it be a fact, that some or all of the property owners favoring condemnation so voted in a mistaken reliance upon the bill's validity, is totally irrelevant, particularly in light of the nature and effect of the "election."

In other words, no councilman was allegedly bound by his constituents' viewpoints, whether such were well or poorly founded, nor was the adoption

or defeat of the ordinance delegated to the voters. Furthermore, whether a councilman relied on or was influenced by the consensus is a matter brooking no judicial inquiry; his motives in voting to adopt or reject the ordinance may not be inquired into. (*Hadacheck* v. *Alexander* (1915) 169 Cal. 616 [147 P. 259]; *Plaza Amusement Co.* v. *Carter* (1936) 11 Cal.App.2d 414, 417-418 [54 P.2d 67].)

■ The fourth cause of action likewise is fatally deficient. It speaks of the authorization to acquire airspace (an air easement) contained in Code of Civil Procedure sections 1239.2 and 1239.4. However, the city ordinance involved makes no mention of an easement, but of the acquisition of all properties "in fee simple." Thus, the properties will not be acquired solely to protect airport approaches from any "encroachment of structures or vegetable life" interfering with, or hazardous to the use of, the airport.

The taking of a fee simple is authorized under Code of Civil Procedure section 1239, subdivision 1, when land is taken for "Public buildings or grounds." Properties may be acquired for the public uses specified in Code of Civil Procedure section 1238, subdivision 20, reading in part as follows: ". . . the right of eminent domain may be exercised in behalf of the following public uses: . . . 20. Airports for the landing and taking off of aircraft, and for the construction and maintenance of hangars . . . flying fields, signal lights and radio equipment."

Since neither section 1239.2 nor section 1239.4 is involved in the condemning ordinance, their effect raises a false issue the determination of which is not here justiciable.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 16, 1972.